IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI, *by its Office of Consumer Protection*, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT L. STONE and CYNTHIA A. STONE, *doing business as GAH Law Group, LLC*, <br><br> Defendants. | Case No. 19-cv-00272-DKW-RT <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM, STRIKE JURY DEMAND, AND STRIKE PORTIONS OF THE ANSWER** |

On May 30, 2019, the State of Hawaiʻi, through its Office of Consumer Protection (OCP or Plaintiff), initiated this action against Robert and Cynthia Stone (collectively, Defendants), alleging violation of numerous federal and state laws. Thereafter, Robert Stone (Stone) answered and counterclaimed against OCP, including demanding a jury trial. In his counterclaims, Stone likewise alleges violations of both federal and state law. On August 26, 2019, OCP, *inter alia*, moved to dismiss Stone's counterclaims and to strike the demand for a jury trial ("the motion").

The motion presents several arguments with merit. First, as to Stone's claims under 42 U.S.C. Section 1983, the Court agrees that OCP is not a "person."

Second, the Court also agrees that none of Stone's counterclaims under state law assert a plausible claim and leave to amend would not change that. As a result, the motion is GRANTED to the extent it seeks dismissal of Stone's counterclaims. However, the Court does not agree that Stone has no right to a jury trial with respect to OCP's claims. In addition, because it is unnecessary at this stage of the proceedings to address whether certain of Stone's affirmative defenses should be stricken, the Court DENIES this aspect of the motion without prejudice to renewal.

## RELEVANT BACKGROUND

OCP is a state civil law enforcement agency responsible for investigating suspected violations of and enforcing consumer protection laws. In essence, OCP alleges that Defendants violated the consumer protection laws of Hawaiʻi and the federal government by, *inter alia*, taking payment from consumers for services not yet performed, failing to use written contracts with consumers, and operating a company that was not registered to do business in Hawaiʻi. For relief, OCP seeks a declaratory judgment regarding the foregoing alleged violations, permanent injunctive relief preventing Defendants from performing certain services in Hawaiʻi, an accounting of all funds Defendants have received from their alleged activities, the assessment of various allegedly "non-compensatory civil fines and penalties," a declaratory judgment rendering all of Defendants' contracts void and unenforceable,

the disgorgement of any money or assets Defendants obtained due to any wrongful acts, and attorneys' fees and costs.

One of the defendants, Stone, proceeding pro se, has filed an Answer to the Complaint and Counterclaims.   Dkt. No. 16.[1]   That filing, in particular the counterclaims, is the subject of the instant motion.   In the motion, OCP seeks dismissal of all of the counterclaims for various reasons, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).   Among other things, OCP argues that it has sovereign immunity from Stone's claims, Stone's claims are insufficiently pled, certain claims cannot be pled against OCP, Stone's claims are time-barred, and Stone does not have standing to assert many of his claims.

As for the counterclaims themselves, Stone makes a range of allegations–on behalf of himself and other individuals who are not named as parties–against OCP and Hawai'i's Office of Disciplinary Counsel (ODC), which is also not named as a party.   Counterclaims One through Seven all allege violations of Sections 1983 and/or 1985 of Title 42.   Counterclaim One concerns an alleged violation of due process related to OCP and ODC depriving Stone, his "former clients," and an attorney, Gary Dubin, of fair trials.   Counterclaim Two concerns OCP and ODC allegedly interrogating and threatening Chester Abing, a "former client" of Stone's. Counterclaim Three concerns OCP and ODC allegedly denying Stone's "former

---

[1]The other defendant, Cynthia Stone, also proceeding pro se, has filed a motion to dismiss the Complaint.   Dkt. No. 17.   That motion will be decided in a separate Order of this Court.

3

clients" their right to counsel. Counterclaim Four concerns OCP and ODC denying Stone's "former clients" equal protection by "rigging the odds in court" between the clients and so-called "pretender-lenders." Counterclaim Five concerns an alleged conspiracy that appears to involve "lawyers who control" the OCP and ODC depriving Stone's "former clients" of equal protection. Counterclaim Six concerns allegedly depriving Stone's "clients" the right to access the courts. Counterclaim Seven concerns an alleged failure to prevent violations of Stone's "clients'" constitutional rights.

Counterclaims Eight through Twelve state that they are premised upon state law. Counterclaim Eight concerns allegedly subjecting Stone, Dubin, and other unknown lawyers to judicial proceedings with insufficient probable cause. Counterclaim Nine concerns an alleged conspiracy "to accomplish an unlawful purpose by unlawful means." Counterclaim Ten concerns alleged intentional "acts and conduce [*sic*]" that caused Stone, his "former clients," and Dubin severe emotional distress. Counterclaim Eleven alleges that the State of Hawaiʻi is liable for "all torts committed by its agents." Finally, Counterclaim Twelve appears to assert that OCP is required to pay "any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities."

Stone has filed an opposition to the motion, Dkt. No. 38, and OCP has filed a reply, Dkt. No. 42. On September 26, 2019, the Court vacated the hearing on the motion, Dkt. No. 45, and this Order now follows.

## STANDARD OF REVIEW

### I.    Motion to Dismiss Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may move for dismissal of a claim or claims due to a lack of subject matter jurisdiction. When deciding such a motion, a district court may consider extra-pleading material submitted by the parties, such as affidavits, and, if necessary, resolve factual disputes. *Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The burden of establishing subject matter jurisdiction "'rests upon the party asserting jurisdiction[,]'" *id*. (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), which, with respect to the counterclaims, is Stone.

### II.    Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment.   *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

## III.   <u>Pro Se Status</u>

Because Stone is proceeding without legal representation, the Court liberally construes his counterclaims.   *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).   With that in mind, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the … deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66

F.3d 245, 248 (9th Cir. 1995).   However, the Court cannot act as counsel for a pro

se litigant or supply the essential elements of a claim.   *Pliler v. Ford*, 542 U.S. 225,

231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

1982).

**DISCUSSION**

In its motion, Dkt. No. 30-1, OCP seeks dismissal of the counterclaims on

asserted subject matter jurisdiction and pleading grounds.   Because subject matter

jurisdiction goes to this Court's power to adjudicate a claim, whether deficiently

pled or not, the Court addresses that argument first.   *Steel Co. v. Citizens for a

Better Env't*, 523 U.S. 83, 94-95 (1998).

## I.   Rule 12(b)(1)

OCP argues that subject matter jurisdiction is lacking over Stone's

counterclaims on two grounds.   First, the counterclaims are barred by the Eleventh

Amendment and by sovereign immunity.[2]   Second, Stone does not have standing to

---

[2]Because it makes no difference to their resolution, the Court will assume for purposes of the instant motion that these arguments pertain, as OCP appears to contend, to subject matter jurisdiction.   *Cf. Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (stating that the Supreme Court has not decided whether Eleventh Amendment immunity concerns subject matter jurisdiction); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000) ("Though not jurisdictional in the traditional sense, whether the Tribe's claims are barred by the Eleventh Amendment presents threshold issues for our review.").   In addition, the Court notes that, although, in its opening memorandum, OCP places legal arguments concerning its immunity under a Rule 12(b)(1) heading, *see* Dkt. No. 30-1 at 11-13, in its reply, OCP states that this Court need not address its immunity arguments due to other arguments it has made, *see* Dkt. No. 42 at 9 n.1.   However, as OCP appears to recognize in its reply, at most, this argument would apply only to Stone's federal counterclaims.   *See id.*   Therefore, the Court will address OCP's arguments that it is entitled to Eleventh Amendment and sovereign immunity.

assert the counterclaims on behalf of anyone other than himself. The Court addresses each of these arguments in turn.

## A. __Immunity__

OCP argues that it is entitled to both Eleventh Amendment and sovereign immunity. Although it is not entirely clear as to which of the counterclaims these arguments are directed, it appears that Eleventh Amendment immunity is being raised with respect to all of the counterclaims, while sovereign immunity is being raised with respect to some (but not all) of the same. Whatever may be the logistical scope of the arguments, at this juncture in the proceedings, the Court does agree with OCP's arguments.

As OCP acknowledges in its memorandum, at least with respect to the Eleventh Amendment, the fact that OCP is the one that filed this lawsuit in federal court may create an issue (or two) with the assertion of an immunity defense. *See* Dkt. No. 30-1 at 21. In particular, as OCP frames the issue, "[w]hile it could be argued that OCP waived its Eleventh Amendment immunity by filing suit in federal court…at the very most immunity would only be compromised to the extent the counterclaim…arises out of the same transaction and occurrence that is the subject matter of OCP's complaint…." *Id.* Even if the Court was willing to accept OCP's contention that a counterclaim must be "compulsory" for the Eleventh Amendment

to have been waived as to that claim,[3] at this juncture in the proceedings, the Court is unprepared to find that Stone's counterclaims, at least to the extent Stone has standing to bring the claims (which is discussed below), are not "logically related" to the claims in OCP's Complaint.  *See In re Lazar*, 237 F.3d 967, 979-981 (9th Cir. 2001) (applying a "logical relationship test" to determine if a claim arises out of the same transaction or occurrence) (quotation and internal quotation omitted).[4]

Although Stone's counterclaims are far from a model of clarity, generally speaking, it appears that they are premised upon alleged wrongdoing by OCP with respect to events–Stone's assistance (or lack thereof) to Hawaiian homeowners threatened with foreclosure–that also appear to be the general premise of OCP's claims in the Complaint.   Whether Stone has standing to bring all of his counterclaims and whether he can even bring those claims against OCP are discussed below, but, at this juncture, the Court is unprepared to find that Stone's counterclaims are not logically related to OCP's claims.   As a result, based upon the

---

[3]Which is by no means a foregone conclusion.   In support of this contention, OCP cites a Fifth Circuit decision, which is not binding on this Court.   While the Court's independent research of the law in *this* Circuit has not found a case directly on point, in *In re Lazar*, 237 F.3d 967, 978 (9th Cir. 2001), the Ninth Circuit concluded that, "when a state or an 'arm of the state' files a proof of claim in a bankruptcy proceeding, the state waives Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim.   However, whether those claims are limited to only compulsory counterclaim/recoupment …or allow for a broader affirmative recovery from the state, need not be addressed here."   While *Lazar* involves a state's proof of claim in bankruptcy, this Court sees no obvious reason why its holding would not apply equally to a state *initiating a lawsuit*.

[4]The Court is also unprepared to find at this stage whether Stone's counterclaims seek only "recoupment" or "a broader affirmative recovery," *see Lazar*, 237 F.3d at 978, given that, as far as the Court is aware, the requested breadth of Stone's recovery, if any, has not been presented.

arguments presented, the Court rejects OCP's assertion that it is protected by the Eleventh Amendment from Stone's counterclaims.[5]

## B.  Standing

OCP's arguments with respect to standing, however, are much more persuasive.   Essentially, OCP argues that the counterclaims are, in numerous instances, asserted on behalf of individuals other than Stone.   This is an entirely accurate description of the counterclaims, and Stone does not dispute it, acknowledging as much in his response.   *See* Dkt. No. 38 at 25.   Notably, every single one of the counterclaims, whether in part or in toto, is asserted on behalf of Stone's "former clients" or attorneys such as Dubin.   In particular, at the very least, Counterclaims Two, Three, Four, Five, Six, and Seven are asserted entirely on behalf of persons who are not Stone.

---

[5]The Court doubts that the analysis is any different for sovereign immunity.   In its opening memorandum, OCP appears to contend without any support that the analysis applicable to Eleventh Amendment immunity is different from sovereign immunity.   *See* Dkt. No. 30-1 at 22-23.   Further, in its reply, OCP goes some way to blur the lines between what it describes as the two immunity concepts.   *See* Dkt. No. 42 at 9-10.   Whatever may be the argument OCP is attempting to assert in this regard, the Court is skeptical that the consequences of OCP initiating this action are any different for the waivers of Eleventh Amendment and/or sovereign immunity. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (explaining that "a State may waive its sovereign immunity by consenting to suit[,]" which "will generally exist where the State either voluntarily invokes jurisdiction or makes a clear declaration that it intends to submit itself to jurisdiction.") (quotation and citation omitted); *see also United States v. Mottolo*, 605 F. Supp. 898, 910 (D.N.H. 1985) ("Filing suit as a plaintiff constitutes a waiver of Eleventh Amendment immunity as well as sovereign immunity with respect to any counterclaim asserted by a defendant which arises out of the same event underlying the State's claim and which is asserted defensively in recoupment for the purpose of diminishing the State's recovery.").   Therefore, for present purposes, the Court similarly finds that OCP is not protected from Stone's counterclaims by sovereign immunity.

As OCP asserts, this is problematic because, generally, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotation omitted). In response, Stone asserts that he can because his "relationship" with "homeowners who are losing their homes" "is such that [he] is fully as effective a proponent of their rights as they themselves would be" and "it is highly unlikely" the "desperate" homeowners "will possess sufficient incentive" to vindicate their rights. Dkt. No. 38 at 26-27.

Stone's arguments are misplaced. In *Kowalski*, the Supreme Court explained that a party seeking to assert third-party standing must make two additional showings. "First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130 (citation omitted). Here, Stone's arguments satisfy neither component.

First, other than alleging that some of the third parties are his "former clients" and that he "assists" certain of the other third parties, Stone fails to explain how his current, or even former, relationships with these often unidentified third-parties was close. In particular, with respect to the "clients," upon whose behalf most of the counterclaims are asserted, the Court notes the amorphous nature of whatever

"relationship" may exist or may have existed between Stone and the clients. As an initial matter, given that Stone describes them as *former* clients, it appears that any relationship that once existed is now over. Next, Stone's Answer sheds doubt on whether the clients were, in fact, *Stone's* clients. Notably, in answering the OCP's allegations that Stone failed to properly memorialize agreements with consumers, Stone states that he is a "[p]aralegal assistant[]" who does not have contracts with his *attorneys' clients*. In other words, Stone makes clear that the clients were not his own. Whether or not Stone had contracts with these third-parties, what is clear is that any "relationship" with Stone was not close. *See Kowalski*, 543 U.S. at 130-131 (concluding that "a future attorney-client relationship with as yet unascertained Michigan criminal defendants" was insufficiently close because the relationship was hypothetical).

Second, there is no alleged hindrance to the third-parties here enforcing their own rights. With respect to the third-party attorneys, Stone does not contend otherwise. *See* Dkt. No. 38 at 26-27. Nor can the Court, under the alleged circumstances of this case, hypothesize any possible hindrance attorneys may have in enforcing their own rights. As for the third-party clients, all Stone asserts, without any support or alleged factual basis, is that the "affected homeowners, who are in desperate situations[,]" will be "highly unlikely" to possess sufficient incentive to enforce their rights. *Id*. at 27. The Court does not see why. This

inquiry looks to the "likelihood and ability of the third parties…to assert their own rights." *Powers v. Ohio*, 499 U.S. 400, 414 (1991). In *Powers*, the Supreme Court found relevant the barriers to a suit by a third-party, such as the opportunity to be heard, the ease of obtaining relief, and the financial stake involved. Stone addresses none of these considerations. Moreover, at least with respect to the financial stake involved, given that Stone alleges that homeowners are being wrongfully foreclosed upon, the financial (and personal) stake here is high. As a result, the Court does not find any hindrance that would justify Stone asserting the rights of others in this case.

The practical result of the foregoing is that many of the counterclaims must be dismissed. In particular, to the extent Counterclaims One, Eight, Nine, Ten, and Eleven are asserted on behalf of "former clients," Dubin, or any other third-party, those claims are DISMISSED WITHOUT PREJUDICE due to a lack of subject matter jurisdiction. *See Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (stating that, "because the district court lacked subject matter jurisdiction, the claims should have been dismissed without prejudice."). In addition, because Counterclaims Two, Three, Four, Five, Six, and Seven are asserted entirely on behalf of third-parties, those claims, in toto, are DISMISSED WITHOUT PREJUDICE due to a lack of subject matter jurisdiction. Moreover,

leave to amend would not be appropriate because no amendment will cure the fact that Stone does not have standing to assert the rights of third parties in this case.

This leaves Counterclaims One, Eight, Nine, Ten, Eleven, and Twelve to the extent those claims are asserted on behalf of Stone. The Court now addresses OCP's arguments under Rule 12(b)(6) with respect to those claims.

## II.  Rule 12(b)(6)

Because the remaining counterclaims are brought under federal (Counterclaim One) and state law (Counterclaims Eight, Nine, Ten, Eleven, and Twelve), the Court first addresses OCP's argument that Counterclaim One is insufficiently pled under federal law.

### A.  Counterclaim One

OCP argues that Counterclaim One is insufficiently pled because the claim is premised upon Section 1983, and OCP is not a "person" for purposes of that statute. In response, Stone does not oppose the legal argument OCP makes; instead, he contends that OCP cannot "tie his hands" by claiming it is not a person under Section 1983. Stone asserts that such a result would be "too obviously unfair." Stone's argument, however, is meritless. More specifically, there is no dispute as to the nature of the law in this regard: the Supreme Court has held that a State is not a "person" for purposes of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The same is true of governmental entities that are

considered "arms of the State." *Id*. (quotation omitted). Here, Stone does not challenge OCP being an arm of the State of Hawaiʻi, likely for good reason given that OCP was created within Hawaiʻi's Department of Commerce and Consumer Affairs. *See* Haw. Rev. Stat. § 487-2. Stone's assertions of unfairness, therefore, provide no basis to ignore the Supreme Court's interpretation of Section 1983.

As a result, Counterclaim One is DISMISSED WITH PREJUDICE for failure to state a claim against OCP. Moreover, leave to amend would not be appropriate because no amendment will change the settled nature of the law in this regard.

## B.    **Counterclaim Eight**

In Counterclaim Eight, Stone alleges that OCP[6] caused him, Dubin, and other unknown attorneys "to be subjected to judicial proceedings for which there was insufficient probable cause," and OCP did so maliciously. OCP argues that this claim should be dismissed because, *inter alia*, it is barred by a two-year statute of limitations. Dkt. No. 30-1 at 26-27. In response, Stone appears to assert that the claim is not time-barred because OCP "intervened in litigation in a partisan manner, without leave of court, and made bogus threats" against a homeowner in August

---

[6]The Court notes that this counterclaim, like most (if not all) of the others, is asserted against the "Counterclaim-Defendants." *See* Dkt. No. 16 at 69 (¶ 64). "Counterclaim-Defendants" is not defined in the Answer or counterclaims, but, arguably, the term alludes to certain lawyers purportedly named elsewhere in the counterclaims who "control" OCP and ODC. *See id*. at 55, 62 (¶ 27). To the extent this is meant to be the identity of the "Counterclaim-Defendants," the Court, nonetheless, only construes the counterclaims as having been asserted against OCP because (1) other than Stone, OCP is the only named party in the counterclaims, *see id*. at 62 (¶¶ 24-25), and (2) OCP is the only party upon whom the counterclaims have been served, *see id*. at 76.

2018 and an attorney in May 2019. Dkt. No. 38 at 23. Stone also appears to assert that any of OCP's acts that fall outside of the limitations period are rescued by the fact that some of its alleged violations fall inside the period and the acts represent a pattern of conduct. *Id*.

As an initial matter, in light of the Court's finding, *supra*, that Stone does not have standing to assert claims on behalf of third-parties, his arguments in this regard are unavailing. The only events that Stone indicates may fall within the limitations period are ones involving a third-party homeowner and a third-party attorney. Put another way, Stone does not point to a single event involving himself that falls within the limitations period.

Moreover, the Hawaiʻi Supreme Court has explained that a cause of action for malicious prosecution accrues when "(1) the prosecution has been finally and favorably decided on appeal, or (2) it has been finally and favorably decided in the trial court and the time for appeal has passed." *Wong v. Cayetano*, 143 P.3d 1, 17 n.11 (Haw. 2006). This is because one of the elements of any such claim is that "the prior proceedings must have been terminated in the plaintiff's favor." *Id*. at 17. Here, Stone fails to allege that any proceeding has been terminated in his favor. Nor could he, given that he admits that the only proceedings initiated against him did *not* end in his favor. *See* Dkt. No. 16 at 3 (¶¶ 19-21) (admitting that an order allowing Stone to resign in lieu of discipline was entered in October 2015); *id*. at 4

(¶ 24) (admitting that an order of disbarment was entered in May 2016 by the Illinois Supreme Court). As such, aside from being time-barred, Counterclaim Eight must be DISMISSED WITH PREJUDICE because Stone has failed to allege an actionable claim for malicious prosecution. Further, leave to amend would not be appropriate because no amendment will change the fact that no alleged proceeding has been terminated in Stone's favor.

### C.  Counterclaim Ten

In Counterclaim Ten, Stone purports to assert a claim of intentional infliction of emotional distress, alleging that the "acts and conduce [*sic*]" of OCP were "extreme and outrageous" and caused "severe emotional distress" to him, Dubin, and Stone's "former clients." That is essentially all Stone alleges in this regard.

In Hawaiʻi, a claim of intentional infliction of emotional distress requires a plaintiff to allege: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Haw.*, 73 P.3d 46, 60-61 (Haw. 2003). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Tseu ex rel. Hobbs v. Jeyte*, 962 P.2d 344, 352 (1998) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

As an initial matter, the conclusory allegations in Counterclaim Ten do not set forth a plausible claim for intentional infliction of emotional distress. *See Iqbal*, 556 U.S. at 678 (explaining that a court need not accept legal conclusions). As a result, Counterclaim Ten must be DISMISSED on that basis alone. Moreover, dismissal must be with prejudice and without leave to amend, given that, as the allegations pertain to Stone *himself*, even if true, come nowhere close to the level of outrageousness that is required in Hawaiʻi.

### D. Counterclaims Nine and Eleven

In Counterclaim Nine, Stone purports to assert a claim of civil conspiracy, alleging that OCP conspired to "accomplish an unlawful purpose by unlawful means." Neither the "purpose" nor the "means" are identified, however. In Counterclaim Eleven, Stone simply alleges that the State of Hawaiʻi is liable for "all torts" committed by OCP. Neither of these counterclaims can proceed, and must be DISMISSED WITH PREJUDICE, for the simple reason that all of Stone's underlying counterclaims have been dismissed with prejudice. *See Weinberg v. Mauch*, 890 P.2d 277, 286 (Haw. 1995) (explaining that, if a plaintiff does not set forth an actionable claim, there can be no claim based solely upon conspiracy); *Henderson v. Prof'l Coatings Corp.*, 819 P.2d 84, 88 (Haw. 1991) (explaining that, under the doctrine of respondeat superior, "the employer is held accountable and liable for the negligent acts of its employees.") (quotations omitted). Moreover,

leave to amend would not be appropriate because Stone's underlying counterclaims have been dismissed with prejudice and without leave to amend.

### E.   Counterclaim Twelve

Counterclaim Twelve is described as a claim for "indemnification," in which Stone appears to allege that OCP must pay any tort judgment for which its employees are found liable.   Putting aside the many deficiencies with this assertion, the Court notes that this purported counterclaim is more accurately a remedy request, rather than an actual *claim*.   Given that all of Stone's counterclaims have been dismissed with prejudice, Counterclaim Twelve, therefore, also fails and is DISMISSED WITH PREJUDICE and without leave to amend.

## III.   Motion to Strike

In the motion, OCP also seeks to strike (1) Stone's request for a jury trial and (2) various affirmative defenses Stone has asserted in his Answer.   The Court addresses each matter in turn.

### A.   Jury Trial Request

Stone's Answer requests a jury trial "on all issues so triable."   With respect to Stone's counterclaims, given that the Court, *supra*, has dismissed all of the same with prejudice and without leave to amend, OCP's motion to strike is DENIED AS MOOT.   This leaves the claims OCP brings in its Complaint.

In the Complaint, OCP asserts eight causes of action against Stone, all of which are brought under various provisions of federal and state law. As relief for Stone's alleged conduct, OCP seeks injunctive and declaratory relief, an accounting of funds derived from Stone's allegedly unlawful activities, assessment of various "non-compensatory civil fines and penalties," disgorgement of money and/or assets obtained from Stone's allegedly wrongful acts, and attorneys' fees and costs.

In any particular case, there may be a constitutional and/or statutory right to a jury trial. *Tamosaitis v. URS Inc.*, 781 F.3d 468, 485 (9th Cir. 2015). Here, neither Stone nor OCP points the Court to any provision of the statutes under which OCP brings its claims suggesting that a *statutory* right to a jury trial exists. "Given this statutory silence," the Court turns to whether a constitutional right to a jury trial exists. *See id.* (quotation omitted). In doing so, this Court must "examine the nature of the statutory action and the remedy sought," with "[c]onsideration of the remedy sought [being] the critical factor." *Id.* at 486 (quotation omitted). In that regard, "[p]arties have a right to a jury trial in lawsuits seeking legal remedies. Legal remedies are distinct from equitable remedies in that they are 'intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo.'" *U.S. Sec. Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1106 (9th Cir. 2016) (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

Here, OCP's Complaint seeks both legal and equitable remedies. On the equitable side, OCP seeks injunctive relief, disgorgement, and an accounting. *See Sec. Exch. Comm'n v. Jasper*, 678 F.3d 1116, 1130 (9th Cir. 2012) (disgorgement); *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 367 F.3d 1108, 1111 (9th Cir. 2004) (injunctive relief); *cf. Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (explaining that an accounting for profits is an equitable remedy). On the legal side, at a minimum, OCP seeks fines and penalties. *See Jensen*, 835 F.3d at 1106 (holding that the Securities and Exchange Commission was entitled to a jury trial where it sought, *inter alia*, civil penalties on six of its seven claims).

In this light, then, Stone has a right to a jury trial. *See id.* ("That the SEC, in addition to seeking civil penalties, also requested equitable relief for Claims One through Six does not undercut its entitlement to a jury. Where, as here, a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.") (quotations omitted). As a result, with respect to the claims asserted in the Complaint, OCP's motion to strike Stone's jury trial demand is DENIED.[7]

---

[7]In its opening memorandum, OCP cites an out-of-district case for the proposition that Stone's request for a jury trial should be stricken. According to OCP, that case is "like the instant case[.]" However, that is not so. In the case OCP relies upon, *Fed. Trade Comm'n v. Lanier Law, LLC*, 2015 WL 9598794 (M.D. Fla. Dec. 8, 2015), the court struck the jury demand because the Federal Trade Commission's (FTC) complaint sought only equitable remedies in the form of injunctive relief, disgorgement, rescission, and restitution. *Id.* at *3. Notably, the FTC did not seek fines or

**B.** **Affirmative Defenses**

OCP also seeks to strike a number of affirmative defenses asserted in Stone's Answer.   Having reviewed the (brief) arguments asserted in support of each request to strike, the Court is unprepared to strike the affirmative defenses as OCP requests, because it is far from clear whether Stone intends to pursue those defenses, rather than simply having asserted them as a protective measure.   The Court's denial in this respect is without prejudice in the event the challenged affirmative defenses become issues later in this case.

## CONCLUSION

For the reasons set forth herein, the motion, Dkt. No. 30, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: October 8, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

penalties, like OCP does here.   As such, *Lanier Law* is factually distinguishable from this case in light of the *legal* remedies OCP seeks.