IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI, *by its Office of Consumer Protection*,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT L. STONE, *doing business as GAH Law Group, LLC*,<br><br>Defendant. | Case No. 19-cv-00272-DKW-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

# **INTRODUCTION**

Plaintiff State of Hawaiʻi, through its Office of Consumer Protection (OCP), moves for summary judgment on one of its two federal claims and on each of its state law claims. OCP does so on the basis of myriad alleged wrongdoings by Defendant Robert L. Stone and, in support, OCP has provided the Court with a trove of documents that it presumably believes demonstrate this misconduct. The problem, however, is that there is little treasure in this trove. Moreover, it is not this Court's role to independently mine this trove to locate the nuggets OCP believes are there. As such, in most respects, OCP, as the party with the burden, has failed to show that it is entitled to summary judgment. In addition, even where OCP establishes an *entitlement* to relief on a claim, it fails to connect that claim to the

*remedy* it seeks. Therefore, for the reasons set forth below, the motion for summary judgment, Dkt. No. 57, is GRANTED IN PART and DENIED IN PART.

**RELEVANT PROCEDURAL BACKGROUND**

As the Court stated in a prior order in this case, OCP is a state civil law enforcement agency responsible for investigating suspected violations of and enforcing consumer protection laws. 10/8/19 Order at 2, Dkt. No. 47. In its Complaint, OCP alleged that Stone violated federal and state consumer protection laws by, *inter alia*, taking payment from consumers for services not yet performed, failing to use written contracts with consumers, and operating a company that was not registered to do business in Hawaiʻi.[1] For relief, OCP sought, *inter alia*, permanent injunctive relief preventing Stone from performing certain services in Hawaiʻi, an accounting of all funds Stone has received from his alleged activities, the assessment of various allegedly "non-compensatory civil fines and penalties," a declaratory judgment rendering all of Stone's contracts void and unenforceable, the disgorgement of any money or assets Stone obtained due to any wrongful acts, and attorneys' fees and costs.

On January 9, 2020, OCP moved for summary judgment with respect to all but one of its claims. Dkt. No. 57. The claims for which summary judgment is sought are as follows: (1) violation of the Mortgage Assistance Relief Services Rule

---

[1] OCP also brought claims against Cynthia A. Stone, but she has been dismissed from this case by order of the Court. *See* Dkt. No. 46.

Section 1015.5(a) (Claim One); (2) violation of Hawaiʻi Revised Statutes (HRS) Section 480E-10(a)(9) (Claim Three); (3) violation of HRS Section 480E-10(a)(10) (Claim Four); (4) violation of HRS Sections 480E-3 and 480E-4 (Claim Five); (5) violation of HRS Section 480-2(a) (Claim Six); (6) violation of HRS Chapter 481A (Claim Seven); and (7) violation of HRS Section 487-13 (Claim Eight).

In support of its motion for summary judgment, OCP has submitted a concise statement of material facts (CSF), Dkt. No. 57-1, and various declarations and exhibits, Dkt. Nos. 57-2-9. The CSF also states that it is supported by OCP's request for judicial notice, Dkt. No. 52, with respect to which 51 exhibits are attached.

A hearing on the motion for summary judgment was scheduled for March 20, 2020. Dkt. No. 58. By operation of Local Rule 7.2, therefore, an opposition to the motion for summary judgment was due on or before February 28, 2020. No opposition to the motion for summary judgment, however, was filed by that date.[2] On March 4, 2020, OCP filed a reply in support of its motion for summary judgment, Dkt. No. 59, and, thereafter, the Court vacated the March 20, 2020 hearing and elected to decide the motion without a hearing pursuant to Local Rule 7.1(c), Dkt. No. 65.

---

[2]Instead, on March 4, 2020, Stone filed a motion for extension of time to file an opposition ("motion for extension"), Dkt. No. 60, which the Court denied for numerous reasons, Dkt. No. 64.

3

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a) (Rule 56), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Here, this means that OCP "must establish beyond controversy every essential element" of its claims. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION[3]

As an initial matter, the Court observes that the motion for summary judgment is unopposed. That, however, does not mean that OCP is simply entitled to the entry of summary judgment with respect to its claims. Rather, Rule 56 places the burden on the moving party to establish the lack of a genuine dispute of material fact and entitlement to judgment as a matter of law. In other words, if OCP does not meet that burden, there is no need for Stone to submit opposing evidence or an

---

[3]This Discussion section includes the relevant facts established by the evidence submitted by OCP.

opposing brief. And that is precisely what has occurred in almost all respects. The Court addresses the claims below in the same order in which they are addressed in OCP's opening memorandum, Dkt. No. 57-10.

### 1. Claim Six: Violation of HRS Section 480-2(a)

OCP argues that Stone has committed unfair or deceptive acts or practices by engaging in the unauthorized practice of law. Dkt. No. 57-10 at 9-15. While that may or may not be true, much of the evidence on which Plaintiff relies does not establish that misconduct.[4] Nonetheless, at least in one instance, Stone has admitted to doing so. Stone admits that he prepared and arranged the filing of a responsive pleading in a state foreclosure case. *See* Answer at ¶¶ 300-313, Dkt. No. 16; Compl. at ¶ 312, Dkt. No. 1. Assuming that the foregoing constitutes the unauthorized practice of law, Plaintiff has still only succeeded in half of its battle, as it must still show that the unauthorized practice of law constitutes an unfair or deceptive act or practice under HRS Section 480-2(a). This Plaintiff has failed to do. Instead, Plaintiff dedicates a mere two sentences to the issue, asking this Court to construe another case as "suggest[ing]" that HRS 480-2(a) prohibits the unauthorized practice of law. That case, *Malinay v. Nishimura*, 2013 WL 4240460

---

[4] For example, to support the assertion that Stone "prepared and filed a document using [a lawyer's] name, without [the lawyer's] knowledge or consent[,]" Plaintiff cites pages 6 and 7 of a deposition transcript. Dkt. No. 57-10 at 13. Not one line of those two pages of deposition transcript, however, concern whether Stone prepared or filed documents using another person's name. *See* 8/31/18 Depo. of Richard Steven Geshell at 6:1-7:25, Dkt. No. 1-9.

5

(D. Haw. Aug. 14, 2013), "suggests" nothing of the sort. Instead, *Malinay* merely explains why a non-lawyer cannot rely on HRS Section 480-2(a) in an attempt to represent parties before the court. *Id*. at *2. Other than *Malinay*, Plaintiff provides no basis for this Court to find a violation of HRS Section 480-2(a) here.[5] As a result, the Court denies the motion for summary judgment with respect to Claim Six.

2. **Claim One: Violation of the Mortgage Assistance Relief Services Rule Section 1015.5(a) (Section 1015.5(a))**

OCP argues that Stone violated Section 1015.5(a) by requesting and receiving compensation "before fully performing each service [he] had contracted to perform or represented would be performed…." Dkt. No. 57-10 at 16-24. The language quoted in the foregoing sentence, however, relates to a statute pertinent to Claim Three. For purposes of Claim *One*, the pertinent language states that a violation occurs when a "mortgage assistance relief service provider" requests or receives payment before "the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's

---

[5] Even if Plaintiff had made an attempt to explain why HRS Section 480-2(a) had been violated, it is unlikely any such argument would have succeeded. The Hawai'i Supreme Court has explained that a deceptive act or practice is "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006). With respect to Claim Six, Plaintiff has provided no such evidence. In fact, Stone states that he received his "clients' informed consent" to continue. Answer at ¶¶ 300-313. Thus, even if OCP had done more to explain how a UDAP had occurred, it appears there would at least have been a question of fact with respect to whether the clients at issue had been misled.

6

dwelling loan holder or servicer." 12 C.F.R. § 1015.5(a). Here, assuming that Stone was (or is) a "mortgage assistance relief service provider," Plaintiff has provided no evidence that Stone requested or received payment before any relevant consumer executed a written agreement with his or her loan holder or servicer. Put simply, there is no record whatsoever of whether (or not) any such written agreement has been executed by any possible consumer. Instead, Plaintiff merely asserts that Stone's clients' litigation remains "ongoing." Even if true, that does not necessarily mean that those clients have not executed some form of written agreement with their loan holder or servicer. To be clear, Plaintiff cannot establish each element of its claims through assumptions and presumptions. Rather, *evidence* is required. See Fed.R.Civ.P. 56(c)(1).[6] As a result, the Court denies the motion for summary judgment with respect to Claim One.

### 3. Claim Three: Violation of HRS Section 480E-10(a)(9)

As with Claim One, OCP again argues that a violation has occurred because Stone requested and received money before performing each service he had contracted to perform or represented would be performed. Dkt. No. 57-10 at 31. While, on this occasion, that is the correct statutory language, Plaintiff has once again failed to provide *any* evidence to support the assertion. Notably, there is no

---

[6]It is not as if much evidence need be provided to show whether Stone's clients have executed a written agreement with their loan holder or servicer. All it would take is an affidavit from either the client or the loan holder or servicer to that effect.

7

evidence in the record of the service(s) Stone contracted to perform or represented would be performed. Thus, it is simply impossible, on the current record, to say that Stone requested or received money *before* performing any such service.[7] As a result, the Court denies the motion for summary judgment with respect to Claim Three.

   4.   **Claim Four: Violation of HRS Section 480E-10(a)(10)**

OCP argues that Stone violated Section 480E-10(a)(10) by charging in excess of a statutory cap on compensation. Dkt. No. 57-10 at 25-26. With respect to one of Stone's clients, Jessie Domingo (Domingo), Plaintiff asserts that the payments Stone received are set forth in an exhibit attached to the Complaint, Dkt. No. 1-16, and information related to the statutory cap is set forth in documents attached to the request for judicial notice. In addition, Plaintiff asserts that a "summar[y]" of the foregoing, as well as information related to Stone's other clients, is contained in an exhibit attached to the motion for summary judgment. With respect to Domingo, the information related to the statutory cap appears to support Plaintiff's assertion as to the amount of that cap. However, the exhibit to which Plaintiff cites to support the payments Stone allegedly received is 72 pages long, with 71 pages of checks

---

[7]The Court notes that the term "service" does not appear to be defined in the relevant statute. *See generally* Haw. Rev. Stat. § 480E-2.

made out by multiple clients *other than* Domingo.[8] It is not the Court's obligation to sift through the exhibit to find and tabulate any checks made out by Domingo. Instead, unlike what has happened, it is *Plaintiff's* role to point the Court to specific checks Domingo signed. While the summary attached to the motion for summary judgment states the *amounts* Domingo allegedly paid Stone, no citation is provided to "particular parts" of the record to support those amounts. *See* Fed.R.Civ.P. 56(c)(1)(A). As for the non-Domingo clients, while the summary may helpfully set forth the amounts clients allegedly paid Stone and the alleged statutory caps for those clients' properties, again, no citation is made to the record to support those positions.[9] As a result, the Court denies the motion for summary judgment with respect to Claim Four.

### 5. Claim Five: Violation of HRS Sections 480E-3 and 480E-4

OCP argues that Stone has violated HRS Sections 480E-3 and 480E-4 by failing to use written contracts containing certain language or provisions required by law. Dkt. No. 57-10 at 26-28. More specifically, OCP argues that Stone failed to use written contracts (1) notifying clients of their right to cancel, (2) attaching a notice of cancellation form, (3) disclosing the services to be performed, (4)

---

[8]The Court also notes that the exhibit appears to reflect that Cynthia Stone was the signatory on the account to which checks were made out. *See* Dkt. No. 1-16 at 1.

[9]Contrary to Plaintiff's assertion, the Declaration of John N. Tokunaga does not "describe[]" the "known extent" of the excessive fees Stone collected. At most, the declaration states that, in Mr. Tokunaga's opinion, Stone charged excessive fees. *See* Decl. of John N. Tokunaga at ¶ 39, Dkt. No. 57-6.

9

describing the client's real property, (5) containing Stone's contact information, and (6) stating the name and place to where a notice of cancellation form could be sent. The problem with each of these assertions is not that they may not be true, but, instead, that not one of them is supported by a citation to any materials in the record. *See id.*[10] As a result, the Court denies the motion for summary judgment with respect to Claim Five.

### 6. Claim Eight: Violation of HRS Section 487-13

OCP argues that Stone has violated HRS Section 487-13 by transacting business in Hawaiʻi without having registered to do so. Dkt. No. 57-10 at 28-29. Once again, however, Plaintiff fails to cite to any material in the record to support this assertion. *See id.* Instead, like many others, Plaintiff's assertion is simply that – an assertion. In addition, although Plaintiff fails to cite to it in the memorandum supporting the motion for summary judgment, the CSF does cite to materials in the record that purportedly show that Stone was not registered to do business in Hawaiʻi.

---

[10]Although it is not specifically stated in the memorandum supporting the motion for summary judgment, each of these assertions appears to be based upon the idea that Stone did not have *any* type of written contract with his clients, let alone ones that may not have included all of the language required by law. *See* Reply at 4-5, Dkt. No. 59. In its reply, Plaintiff, again, fails to cite any materials in the record to support this assertion. *See id.* The only apparent citation to the record takes place in the CSF, where Plaintiff cites to various purported admissions in Stone's Answer. *See* CSF at ¶ 15. The Court, however, does not construe those admissions as far as Plaintiff, at least with respect to this claim. Further, as with many of the evidentiary deficiencies identified herein, it does not appear that much evidence would have been needed here to prove OCP's point. Declarations or testimony from Stone's clients as to the absence of any written services contract (assuming that to be true) would have been a good starting point.

*See* CSF at ¶ 24. Those materials do not support the assertion, however.[11][12] As a result, the Court denies the motion for summary judgment with respect to Claim Eight.

### 7. Claim Seven: Violation of Chapter 481A

OCP argues that Stone has violated various provisions of HRS Chapter 481A in failing to register in Hawaiʻi and in "hijack[ing]" the practice of a now deceased attorney, William Gilardy (Gilardy). Dkt. No. 57-10 at 29-33.[13] More specifically, OCP asserts that Stone, a non-lawyer, referred clients to Gilardy, a lawyer, Gilardy conducted his law business under the name GAH Law Group, LLC, and, after Gilardy died in 2017, Stone continued to perform services for his clients

---

[11]First, OCP cites an admission in Stone's Answer. The admission, however, relates to the allegation in the Complaint that a bank account was set up in Illinois using the name GAH Law Group, LLC. *See* CSF at ¶ 24 (citing Compl. at ¶ 119 & Answer at ¶ 119). That has nothing to do with whether Stone was registered to do business in Hawaiʻi. Second, OCP cites exhibit 16 to the Complaint. *See id.* (citing Dkt. No. 1-16.) As discussed earlier, that exhibit contains 72 pages of checks made out by Stone's clients. *See* Dkt. No. 1-16. It is entirely unclear how those checks are relevant to this inquiry.

[12]Although it is not the Court's obligation to do so, the Court notes that attached to Plaintiff's opposition to Stone's motion for extension of time is a Declaration of Kristyne Tanaka. *See* Dkt. No. 61-10. Therein, Ms. Tanaka states, *inter alia*, that (1) Stone is not currently registered to do business in Hawaiʻi, and (2) Stone's registration of Property Rights Law Group, P.C. was revoked after he failed to file annual reports for two or more years. Decl. of Kristyne Tanaka at ¶¶ 5, 7. While Plaintiff fails to rely on Ms. Tanaka's declaration in support of its motion for summary judgment, and, thus, the declaration is irrelevant to the Court's analysis of the same, even if Plaintiff had relied on the declaration, the statements therein only go so far. Notably, the fact that Stone is not "currently" registered, does not mean he was not previously registered to do business in Hawaiʻi. In addition, the fact that the registration for Property Rights Law Group, P.C. had been revoked does not explain *when* that revocation took place relative to Stone's business transactions.

[13]Plaintiff references numerous provisions of Chapter 481A, *see* Dkt. No. 57-10 at 30, however, at least two–Sections 481A-7 and 481A-12–do not actually exist. The Court presumes that Plaintiff meant to cite Section 481A-3(a), which does contain sub-sections that run through the number twelve. *See* Haw. Rev. Stat. § 481A-3(a)(1)-(12).

11

under the name GAH Law Group, LLC without telling those clients of Gilardy's death.

Section 481A-3(a) sets forth various acts that constitute deceptive trade practices. Generally speaking, a deceptive trade practice is one that causes, "as a natural and probable result, a person to do that which he or she would not otherwise do." *Balthazar v. Verizon Hawaii, Inc.*, 123 P.3d 194, 202 (Haw. 2005) (quotation and brackets omitted). The test is "an objective one, turning on whether the act or omission is likely to mislead consumers, as to information important to consumers, in making a decision regarding the product or service." *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006) (quotations and citations omitted). In addition, application of this test is "ordinarily for the trier of fact." However, "when the facts are undisputed and not fairly susceptible of divergent inferences because where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury." *Id.* at 436 (quotation and internal quotations omitted).

Here, as an initial matter, Plaintiff only submits evidence as to one of Stone's clients, Domingo. Specifically, while a declaration from Domingo is provided detailing the practices of Stone, no such declaration is provided for any of Stone's

other purported clients. *See* Dkt. No. 57-10 at 29-33; Dkt. No. 59 at 8-11.[14][15] As a result, the Court denies the motion for summary judgment with respect to Claim Seven to the extent that claim concerns any client other than Domingo.

As for Domingo, in pertinent part, his declaration reflects the following. His property has been in foreclosure since 2012. Decl. of Jessie I. Domingo at ¶ 10, Dkt. No. 57-3. In 2014, he hired Stone's law firm, "Property Right Law Group." *Id*. In January 2016, Stone "brought in" Gilardy to help with Domingo's case, and Stone told Domingo that Gilardy was Stone's partner. *Id*. at ¶ 14. At this time, Domingo signed a contract with GAH Law Group, LLC. *Id*. at ¶ 15. Approximately every month since January 2016, Domingo received invoices from Stone to pay $1,000 to GAH Law Group, LLC, which Domingo would "typically" pay by check. *Id*. at ¶ 27.[16] As of December 4, 2019, Stone was still assisting Domingo with his foreclosure case and Domingo was still paying Stone for this assistance. *Id*. at ¶ 11. Stone did not inform Domingo of Gilardy's death, and Stone first learned of the same after speaking with OCP on December 4, 2019. *Id*.

---

[14] In its reply, Plaintiff describes Domingo as "but one example" of consumer confusion. Dkt. No. 59 at 10 n.1. A more accurate description would be that Domingo is the *only* example for whom evidence has been provided.

[15] Plaintiff's reliance on an email from Stone, *see* Dkt. No. 57-10 at 30-31, is of no help with respect to Stone's other purported clients, as the email fails to establish for how long Stone "kept from his clients that Gilardy had died[,]" *see id*. at 30.

[16] Because Domingo only states that he "typically" paid the invoices he was sent by check, this alone does not mean that he has made payments to Stone in excess of the statutory cap, as discussed in relation to Claim Four above, as the statement does not necessarily establish how many payments Domingo made, particularly from the point when Gilardy died, which, as the State explains, is the relevant point for purposes of its claims. *See* Dkt. No. 57-10 at 3.

at ¶¶ 19-20. During his conversation with OCP, Domingo also learned for the first time that Stone had been disbarred from the practice of law in Hawai'i, apparently the reason Stone first "brought in" Gilardy. *Id*. at ¶ 21. Domingo would not have used Stone's services if he had known that Stone was disbarred or that a licensed attorney was not working on his case. *Id*. at ¶ 40.

In light of the foregoing, the Court has little pause in finding that Stone has violated Section 481A-3(a)(12) with respect to Domingo, even on summary judgment. Specifically, the Court finds that the statements in Domingo's declaration are unopposed and the only permissible inference that can be drawn therefrom is that a reasonable consumer would be misled as to information important in making a decision about continuing to retain Stone's services. *See Courbat*, 141 P.3d at 435-436. Most notably, according to Domingo, Stone never told him that (1) Stone had been disbarred, and, thus, could not legally practice law in Hawai'i, and (2) Gilardy, who, by the time of Stone's disbarment, was the only person allowed to practice law on Domingo's behalf, had died. Both of these omissions are material given that the services at issue involve the *legal* defense of a foreclosure case. *See id*. at 435 (explaining that an omission or practice is "material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (quotation and internal quotation

omitted). As a result, solely as to Domingo, the motion for summary judgment is granted with respect to Claim Seven.

### 8. **Remedies**

At this juncture, the Court is unable to award any remedies, even as to OCP's partial success on Claim Seven. The reason is three-fold. First, in all but one respect, the Court has denied the motion for summary judgment, and, thus, all of the relief OCP seeks with respect to those claims is similarly denied. Second, OCP provides little legal support for the relief it seeks. In its memorandum supporting the motion for summary judgment, OCP cites various statutes. *See* Dkt. No. 57-10 at 33. Only one, however, HRS Section 487-13(c), provides any support. The others simply either do not provide that which OCP contends, HRS Sections 480E-11(a) & (b), or do not pertain to the claims at issue here, HRS Sections 1-6 and 480-12. As for HRS Section 487-13(c), while it does provide that a contract for services by an unregistered person is void, it does not concern any of the other relief OCP seeks.[17][18] Much the same is true of OCP's reply, as other than with respect to statutory fines and penalties, which are, obviously, based upon statute, OCP cites no law supporting the relief it seeks. *See generally* Dkt. No. 59 at 12-14. Third, even if OCP had cited to law supporting the numerous requests for relief it seeks,

---

[17]And, as discussed earlier, OCP has not been granted summary judgment on its claim concerning Stone's alleged failure to register to do business in Hawaiʻi.

[18]In addition, it is unclear why OCP fails to cite HRS Sections 487-14 and 487-15, which *do* provide that OCP may seek restitution and injunctive relief.

15

factually, OCP provides little explanation as to why the Court should award the relief it seeks. Notably, OCP fails to explain why restitution or an accounting should be awarded or even why an accounting (rather than the use of discovery) is necessary here.[19][20] As a result, the Court denies the motion for summary judgment with respect to the remedies OCP seeks at this juncture.

## **CONCLUSION**

For the reasons set forth herein, the motion for summary judgment, Dkt. No. 57, is GRANTED IN PART and DENIED IN PART. Specifically, the motion for summary judgment is GRANTED with respect to liability on Claim Seven solely to

//

//

//

//

---

[19] With respect to restitution, the Court notes that HRS Section 487-14(a) provides that a court "may" award restitution. In other words, restitution is in the discretion of the Court. In that regard, the Hawaiʻi Supreme Court has explained that restitution is appropriate when the retention of a benefit would be "unjust." *See Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 72-73 (Haw. 2004).

[20] As for an accounting, OCP asserts that the information it seeks "could not have been fully compiled during discovery because Stone remains engaged in the wrongdoing, and is still receiving payments, and will likely continue to receive payments until he is enjoined from doing so." Dkt. No. 59 at 14. Even if true, that does not explain why an accounting (rather than discovery) is necessary to determine the payments Stone has allegedly *already* received, at least up to a certain date. Notably, the summary discussed above with respect to Claim Four, Dkt. No. 57-9, appears to document payments through January 22, 2019. It is, thus, entirely unclear why discovery could not be used to document further payments that Stone has allegedly received.

16

the extent that claim concerns Jessie Domingo. In all other respects, the motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED: April 2, 2020 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

**State of Hawaii v. Robert L. Stone; Civil No. 19-00272 DKW-RT;**
**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**