IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STATE OF HAWAI'I, *by its Office of Consumer Protection*,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT L. STONE, *doing business as GAH Law Group, LLC*,<br><br>Defendant. | Case No. 19-cv-00272-DKW-RT<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT** |

## <u>INTRODUCTION</u>

Plaintiff State of Hawai'i, through its Office of Consumer Protection (OCP), moves for summary judgment a second time on most of its federal and state law claims.   As it did last time, OCP does so on the basis of myriad alleged wrongdoings by Defendant Robert L. Stone and, in support, OCP has provided the Court with another multitude of documents that it contends demonstrate Stone's misconduct.   Because, in most instances, there are sufficient undisputed pieces of pertinent evidence in the record to support OCP's entitlement to relief, the second motion for summary judgment, Dkt. No. 101, is GRANTED IN PART and DENIED IN PART.

## <u>RELEVANT PROCEDURAL BACKGROUND</u>

As the Court has stated before, OCP is a state civil law enforcement agency responsible for investigating suspected violations of and enforcing consumer protection laws.   10/8/19 Order at 2, Dkt. No. 47; 4/2/20 Order at 2, Dkt. No. 77. In its Complaint, OCP alleged that Stone violated federal and state consumer protection laws by, *inter alia*, taking payment from consumers for legal services not yet performed, failing to use written contracts with such consumers, and operating a company that was not registered to do business in Hawaiʻi.[1]   For relief, OCP sought permanent injunctive relief preventing Stone from performing certain services in Hawaiʻi, the assessment of various "non-compensatory civil fines and penalties," a declaratory judgment rendering all of Stone's contracts void and unenforceable, the disgorgement of any money or assets Stone obtained due to his wrongful acts, and attorneys' fees and costs.

On January 9, 2020, OCP moved for summary judgment with respect to all but one of its claims ("first motion for summary judgment").   Dkt. No. 57.   No opposition was filed to the first motion for summary judgment.   Nevertheless, upon ruling on the motion, the Court granted OCP only limited relief ("April 2020

---

[1]OCP also brought claims against Cynthia A. Stone, but she has been dismissed from this case for jurisdictional reasons.   *See* Dkt. No. 46.

Order").   Dkt. No. 77.   As set forth in more detail in the "Discussion" section below, the Court denied OCP relief on all but one of its claims, and then, with respect to that claim, only as to one alleged consumer.   The Court did so because, although OCP had submitted a "trove" of purported evidentiary support for its requested relief, the evidence to which OCP cited did little to support its request.

Thereafter, following OCP's request and without objection, the Court extended the time for OCP to file another motion for summary judgment until July 8, 2020, Dkt. No. 81, which was later extended further until August 17, 2020, Dkt. No. 91.   On August 16, 2020, OCP filed the pending motion for summary judgment ("second motion for summary judgment").   Dkt. No. 101.    In support of the second motion for summary judgment, OCP has submitted a concise statement of material facts (CSF), Dkt. No. 98, and numerous declarations and exhibits, Dkt. Nos. 98-1-48, 99-1-77, 100-1-8.   The parties have also stipulated to the admission of certain factual issues ("stipulation").   Dkt. No. 97.   The Court scheduled the second motion for summary judgment for hearing on October 2, 2020, which meant, pursuant to Local Rule 7.2, a response was due on or before September 11, 2020.   No response, however, has been filed by Stone, and OCP did not file an optional reply.

Finally, on October 5, 2020–significantly after the time for briefing had closed with respect to the second motion for summary judgment, Stone filed a motion for stay pending appeal of motions to intervene ("motion for stay").   Dkt. No. 108.   As brief background in that regard, on April 2, 2020, the Court denied three separate motions to intervene in this case by Stone's alleged clients–Chester Noel Abing, Susan Kay Broer-DeShaw, and Dennis Duane DeShaw.   Dkt. No. 76. On April 29, 2020, Abing and the DeShaws filed a notice of appeal of that decision.   Dkt. No. 83.   In the motion for stay, Stone asks for this case to be stayed pending the Ninth Circuit Court of Appeals' ruling on the above-mentioned appeal because the motions to intervene "are at the logical core of this case[]" and, without the proposed intervenors, a trial would be a "farce."   Dkt. No. 108-1 at 9.

## <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56(a) (Rule 56), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   When the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…."   *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Here, this means that OCP "must establish beyond controversy every essential

element" of its claims.   *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).   In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION[2]

### I.   Motion for Stay

The Court begins with Stone's recently filed motion for stay, given that, if the motion were granted, resolution of the second motion for summary judgment would not proceed.   The motion for stay, however, is DENIED because it is a frivolous and transparent attempt to avoid resolution of the unopposed second motion for summary judgment.   While Stone asserts that he waited until now to file the motion because he needed to comply with a July 2020 discovery order, the two are only marginally connected.   Moreover, he ignores the fact that an appeal of the motions to intervene was filed on April 29, 2020–long before any purported discovery order was entered.   In reality, as the Court explained in the order denying the motions to intervene, the instant motion (and the motions to intervene)

---

[2]This Discussion section includes the relevant facts established by the evidence submitted by OCP.

are simply an attempt to turn this case into something it is not.   This the Court will

not allow, irrespective of the procedural vehicle Stone selects to achieve it.[3]

## II.   Second Motion for Summary Judgment

As the Court did in the order addressing the first motion for summary

judgment, the Court observes that the second motion for summary judgment is

unopposed.   That, however, does not mean that OCP is simply entitled to the entry

of summary judgment with respect to all its claims and requested relief.   Rather,

Rule 56 places the burden on the moving party to establish the lack of a genuine

dispute of material fact and entitlement to judgment as a matter of law.   With that

in mind, the Court addresses whether OCP has met its burden in establishing the

elements of its claims in Section A and then addresses the relief OCP seeks in

Section B below.

The claims for which summary judgment is sought are as follows: (1)

violation of the Mortgage Assistance Relief Services Rule Section 1015.5(a)

---

[3]The Court adds that, in the motion for stay, Stone asserts that, if the motion is denied, he would be unable to "explain his motives for his actions" at trial.   Dkt. No. 108 at 9.   He appears to believe this because "only the homeowners can answer" whether he is "helping" them.   *Id*. Putting aside that the homeowners are *not* the only way to answer that question, to the extent that is meant to be Stone's theory of defense, he could quite easily have presented it at summary judgment through, for example, deposition or even declaratory testimony of the homeowners. Stone, however, has failed to do that.   In fact, Stone has failed to offer any defense to the State's summary judgment motion—twice.   As important, and as will become evident, *infra*, Stone's "the ends justifies the means" explanation offers little defense to any of the State's claims.

(Claim One); (2) violation of Hawaiʻi Revised Statutes (HRS) Section 480E-10(a)(9) (Claim Three); (3) violation of HRS Section 480E-10(a)(10) (Claim Four); (4) violation of HRS Sections 480E-3 and 480E-4 (Claim Five); (5) violation of HRS Chapter 481A (Claim Seven); and (6) violation of HRS Section 487-13 (Claim Eight).[4]

## A.     Claims

### 1.     Claim One: Violation of the Mortgage Assistance Relief Services (MARS) Rule Section 1015.5(a) (Section 1015.5(a))

In the April 2020 Order, the Court denied summary judgment with respect to this claim because OCP had failed to provide evidence that Section 1015.5(a) had been violated.   Dkt. No. 77 at 7.

In the second motion for summary judgment, OCP argues that Stone has violated Section 1015.5(a) because (i) he is a "mortgage assistance relief service provider" as defined by the regulation, (ii) he collected payments from clients, and (iii) he did so prior to his clients executing a written agreement with the clients' respective loan holder or servicer that incorporates an offer of mortgage assistance relief obtained by Stone.   Dkt. No. 101-1 at 9-10.   The Court agrees.

---

[4]OCP asks to voluntarily dismiss Claim Six, which concerns violations of HRS Section 480-2(a). Dkt. No. 101-1 at 15.   That request is GRANTED.

Section 1015.5(a) provides that a "mortgage assistance relief service provider" may not "[r]equest or receive payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer[.]"   12 C.F.R. § 1015.5(a).   A "mortgage assistance relief services provider" is defined as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service."   *Id*. § 1015.2.   In turn, "mortgage assistance relief service" is defined as "any service, plan, or program, offered or provided to the consumer in exchange for consideration that is represented, expressly or by implication, to assist or attempt to assist the consumer with…[,]" *inter alia*, stopping a foreclosure sale, negotiating a dwelling loan modification, or obtaining a payment forbearance on a dwelling loan.   *Id*.

Here, starting with whether Stone has provided mortgage assistance relief services, there is no dispute in the record that he has.   Among other things, in his answers to OCP's first request for answers to interrogatories and production of documents, Dkt. No. 98-16, Stone acknowledges that he has assisted "all of his former clients to accept any reasonable offer to modify the terms of any mortgage to permit the former client to reinstate monthly payments."   *Id*. at ¶ 1; 12 C.F.R.

8

§1015.2.   Moreover, Stone further acknowledges that this assistance, at least with respect to some of his clients, continues to this day.   *See* Dkt. No. 98-16 at ¶¶ 7, 9-10, 13-15, 18, 22 (stating that he agreed to help clients obtain a "modification" and he is "in the process of keeping that promise.").   The record further shows that Stone has provided this assistance "for consideration[,]" given that he acknowledges receipt of approximately $274,024 since the start of 2018 from his clients.   *Id*. at ¶4.   Finally, it is also undisputed in the record that Stone received payment from his clients *before* those clients had executed a written agreement accepting mortgage relief from the clients' respective dwelling loan holder.   Dkt. No. 97 at ¶ 1 ("Mr. Stone admits that all payments Mr. Stone received from each of his respective clients were received before his client had executed a written agreement accepting mortgage assistance offered by the dwelling loan holder or servicer, such as, *inter alia*, a loan modification agreement."); 12 C.F.R. § 1015.5(a).

Therefore, OCP is entitled to summary judgment with respect to Claim One.

2.   **Claim Three: Violation of HRS Section 480E-10(a)(9)**

In the April 2020 Order, the Court denied summary judgment with respect to this claim because OCP had failed to provide any evidence of the service(s) Stone

9

contracted to perform or represented would be performed under Section 480E-10(a)(9).   Dkt. No. 77 at 7-8.

On this occasion, OCP argues that Stone "can never establish" that he fully performed under Section 480E-10(a)(9) before receiving payment because he did not use contracts identifying the services he agreed to perform.   Dkt. No. 101-1 at 10-11; *see also infra* Section A.4 and n.11.

As explained earlier, at the initial summary judgment stage, it is not Stone's burden to establish that he could not comply with Section 480E-10(a)(9).   Rather, it is OCP's burden to provide evidence showing that Stone has violated the provision.   OCP appears to believe that Stone violated Section 480E-10(a)(9) because he did not have contracts with his clients, and thus, did not identify the services he would provide.   The Court reads the provision differently, however.

Section 480E-10(a)(9) provides that a "distressed property consultant" shall not "receive any compensation until after the distressed property consultant has fully performed each service the distressed property consultant contracted to perform or represented would be performed[.]"   Haw. Rev. Stat. § 480E-10(a)(9). Nothing in the plain text of that language requires a distressed property consultant to have a written contract with his or her client, as OCP appears to contend. Rather, the provision appears to comprehend *either* a contract *or* a

10

"represent[ation]…."   Further, OCP cites no law suggesting that "represent[ation]" *only* includes a written representation.   Instead, given that the provision already comprehends a contract as a possible avenue of demonstrating the services a consultant may perform, it would seem entirely superfluous for "represent[ation]" to mean something only in written form.   Therefore, the Court disagrees that Stone must have violated Section 480E-10(a)(9) merely because OCP asserts that he did not have contracts with his clients.

Nonetheless, for similar reasons discussed with respect to Claim One above, the record is undisputed that, at least with respect to some clients, Stone made "promise[s]" to clients to obtain a modification of their dwelling loan and those "promise[s]" remain unfulfilled, even though Stone has received compensation from 2018 to this day.   *See* Dkt. No. 98-16 at ¶¶ 7, 9-10, 13-15, 18, 22 (stating that Stone agreed to help clients obtain a "modification" and he is "in the process of keeping that promise."); *see also id*. at ¶ 4 (stating that Stone received approximately $274,024 since the start of 2018 from his clients).[5]   Therefore, with

---

[5]In addition, because "distressed property consultant" under Section 480E-10(a)(9) is defined in essentially the same fashion as "mortgage assistance relief service provider" under Section 1015.5(a), the record also shows that Stone is a "distressed property consultant."   *Compare* Haw. Rev. Stat. § 480E-2, *with* 12 C.F.R. § 1015.2.

respect to those clients,[6] OCP is entitled to summary judgment with respect to Claim Three.

On the current record, or at least the record to which OCP cites in its opening memorandum, the Court cannot conclude that Section 480E-10(a)(9) has been violated with respect to any clients other than the ones noted above. While, in his answers to OCP's interrogatories, Stone admits to fulfilling his promise to obtain a loan modification for some of his clients, no longer representing certain former clients, or not representing an individual at all, Dkt. No. 98-16 at ¶¶ 6, 8, 11-12, 16-17, 19-21, there is no indication therein as to *when* Stone obtained these modifications or stopped representing the relevant client. As such, it is not possible for the Court to conclude that Stone violated Section 480E-10(a)(9) in the relevant period of time in this case, which OCP states is on or after November 9, 2017, *see* Dkt. No. 101-1 at 6. Therefore, as to these clients,[7] the Court denies summary judgment with respect to Claim Three.[8]

---

[6]Specifically, Mr. & Mrs. DeShaw, Mr. Baliguat, Mr. & Mrs. Watson, Mr. & Mrs. Tyrell, Mr. & Mrs. Iosefa, Mr. & Mrs. Abing, Mr. & Mrs. Dicion, and Mr. & Mrs. Galang.

[7]Specifically, Mr. & Mrs. Cabral, Mr. & Mrs. Afuvai, Mr. Domingo, Mrs. Rodil, Mrs. Danielson, Mr. Moore, Mrs. Moseley, Dr. & Mrs. Dimitrion, and Mr. & Mrs. Harrell.

[8]The Court also rejects OCP's contention that Stone violated Section 480E-10(a)(9) by failing to include disclosures required by law in the contracts that he did not have with his clients. *See* Dkt. No. 101-1 at 11. As the Court reads Section 480E-10(a)(9), nothing therein requires the written disclosures OCP claims were omitted.

### 3.   **Claim Four: Violation of HRS Section 480E-10(a)(10)**

In the April 2020 Order, the Court denied summary judgment with respect to this claim because OCP failed to cite any evidence to support its assertions as to the amounts clients allegedly paid Stone or the statutory caps applicable to each client.   Dkt. No. 77 at 8-9.

In the second motion for summary judgment, OCP argues that Stone has violated Section 480E-10(a)(10) because he charged clients more than the amount they paid in real property taxes.   Dkt. No. 101-1 at 12-13.   The Court agrees.

Section 480E-10(a)(10) prohibits a "distressed property consultant" from receiving compensation that exceeds either "the two most recent monthly mortgage installments of principal and interest due on the loan first secured by the distressed property or the most recent annual real property tax charged against the distressed property, whichever is less."   Haw. Rev. Stat. § 480E-10(a)(10).[9]   In support of its argument with respect to this claim, OCP has provided a summary of the payments it believes to be in excess of the statutory cap.   Dkt. No. 99-14.   Having reviewed the same, the real property tax statements in the record (Dkt. Nos. 98-2 to 98-12, 99-13, 99-16), OCP's summary of the payments Stone has received from

---

[9]Here, OCP relies on "the most recent annual real property tax" as the lesser of the two amounts made relevant by Section 480E-10(a)(10).   *See* Dkt. No. 101-1 at 12-13.

his clients (Dkt. No. 98-30), and the admissions in Stone's discovery responses and deposition testimony regarding the payments he has received (Dkt. No. 98-1 at ¶¶ 228, 230-231, 236-237, 239-241, 244, 247, 251-252, 254, 257, 259-260, 296-297; Dkt. No. 99-24 at 11:9-12:8, 19:7-19, 21:12-20, 71:10-13 (referring to Dkt. No. 99-28); Dkt. No. 99-38 at 6:17-7:12; Dkt. No. 99-40 at 13:3-5, 14:25-15:13, 22:16-21 (referring to Dkt. No. 99-5 at 1); Dkt. No. 99-41 at 20:9-21:21), it is clear (and undisputed) that Stone has received payments in excess of the monetary cap set forth in Section 480E-10(a)(10), *see* Dkt. No. 99-53 at 97:1-18.[10]

Therefore, OCP is entitled to summary judgment with respect to Claim Four.

### 4. <u>Claim Five: Violation of HRS Sections 480E-3 and 480E-4</u>

In the April 2020 Order, the Court denied summary judgment with respect to this claim because OCP failed to cite any materials in the record to support its argument that Sections 480E-3 and 480E-4 had been violated.   Dkt. No. 77 at 9-10.

---

[10]During Stone's deposition, the following pertinent exchange took place:

> Q. And we've added a column for excessive payments. What this document is intended to show is that you consistently charge people considerably more than what they were paying in real property taxes.
> A. Right, that's true.

Dkt. No. 99-53 at 97:13-18.

On this occasion, OCP cites to materials in the record, arguing that they show Stone has failed to enter into any contracts with his clients and, to the extent he has, those contracts do not include many disclosures required under Sections 480E-3 and 480E-4.   The Court agrees.

Notably, Stone also agrees that he has not entered into contracts containing the required disclosures.   Dkt. No. 99-28 at 41:2-23; Dkt. No. 99-52 at 93:24-94:10; Dkt. No. 99-28 at 41:2-7.[11]   Having reviewed the contracts that have been provided, the Court agrees with both parties that they are deficient in various respects, including in failing to state the total amount of compensation, in violation of Section 480E-3(a), and the client's right to stop doing business with Stone at any time, in violation of Section 480E-3(e).   *See* Dkt. Nos. 99-33 to 99-43; *see also* Dkt. No. 97 at ¶ 2 (Stone's admission that he did not provide his clients with a written cancellation form when contracting with them).   Therefore, OCP is entitled to summary judgment with respect to Claim Five.

---

[11]Among other acknowledgments, Stone testified that he has not entered into any contract with a client since November 9, 2017, there are no contracts between his clients and the business he was operating under since November 9, 2017, and any contract he may have with a client does not comply with federal or state laws pertaining to mortgage assistance.

5.     **Claim Seven: Violation of Chapter 481A**

In the April 2020 Order, the Court granted in part and denied in part summary judgment with respect to this claim.   Dkt. No. 77 at 11-15.   More specifically, through this claim, OCP seeks to hold Stone liable for allegedly deceptive practices in working for his clients.   The Court granted summary judgment solely to the extent this claim pertained to one of Stone's former clients, Jessie Domingo (Domingo), because an unrebutted declaration from Domingo showed that a reasonable consumer would have been misled by Stone's conduct (or lack thereof).   The Court denied summary judgment, however, to the extent this claim pertained to any other of Stone's clients because OCP provided no evidence of his practices with those clients.

In the second motion for summary judgment, OCP argues that Stone engaged in deceptive practices with his clients by, *inter alia*, not telling them "to look elsewhere" after the death of the lawyer (William Gilardy) with whom they had contracted, telling them to continue making payments to a company with the same name as Gilardy's former law practice (GAH Law Group, LLC), failing to enter into new contracts with them after Gilardy's death, failing to act under contracts compliant with state and federal law, failing to register to do business in

Hawaiʻi, and "implicitly represent[ing]" that his services were "legal in nature[.]" Dkt. No. 101-1 at 15-19.

As the Court explained in the April 2020 Order, Section 481A-3(a) sets forth various acts that constitute deceptive trade practices.   Dkt. No. 77 at 12. Generally speaking, a deceptive trade practice is one that causes, "as a natural and probable result, a person to do that which he or she would not otherwise do." *Balthazar v. Verizon Hawaii, Inc.*, 123 P.3d 194, 202 (Haw. 2005) (quotation and brackets omitted).   The test is "an objective one, turning on whether the act or omission is likely to mislead consumers, as to information important to consumers, in making a decision regarding the product or service."   *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006) (quotations and citations omitted).   In addition, application of this test is "ordinarily for the trier of fact."   However, "when the facts are undisputed and not fairly susceptible of divergent inferences because where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury."   *Id*. at 436 (quotation and internal quotations omitted).

Here, when viewed in the light most favorable to Stone, the Court cannot award summary judgment to OCP based upon the arguments and evidence it has submitted.   Principally, while the arguments and evidence may *suggest* Stone has

engaged in one or more deceptive practices, that is not *necessarily* the case.   For example, simply because Stone did not tell Gilardy's clients to "look elsewhere" or to stop making payments to GAH Law Group, LLC does not necessarily mean that Stone deceived those clients, as the record cited by OCP is entirely silent with respect to what Stone told the clients after Gilardy's death.[12]   The same is true of OCP's reliance on Stone's admission that he "implicitly represented" that services from GAH Law Group, LLC were "legal in nature."   Notably, apart from being an opaquely-phrased question, there is no explanation (or admission) as to what "legal in nature" implicitly meant.   Simply put, without testimony from the clients or an admission from Stone, it is not possible on the present record for the Court to find that Stone engaged in deceptive practices.

As a result, summary judgment is denied with respect to Claim Seven.

### 6.   Claim Eight: Violation of HRS Section 487-13

In the April 2020 Order, the Court denied summary judgment with respect to this claim because OCP failed to cite any material in the record to support its

---

[12]Other than Domingo, the one exception to the silent record is a declaration provided by OCP with respect to Stone's purported "prospective client[,]" Nancy Moseley.   *See* Dkt. No. 99-72. Whether or not Moseley's recounting of events between herself and Stone constitutes a deceptive practice is beyond the scope of the analysis here because Stone disputes the assertion that Moseley was one of his clients (Dkt. No. 98-1 at ¶ 271 (p.73)) and because the events concerning Moseley are not alleged in the Complaint.

18

assertion that Stone had violated Section 487-13 by failing to register to do business in Hawai'i.   Dkt. No. 77 at 10-11.

On this occasion, *inter alia*, OCP cites various responses to requests for admission by Stone that it asserts show he failed to register to do business in Hawai'i from, at least, November 9, 2017.   Dkt. No. 101-1 at 19-20.   The Court agrees.

Moreover, so does Stone.   Specifically, in his responses, Stone admits that, from November 9, 2017, he "failed to register with the State of Hawaii's Department of Commerce and Consumer Affairs' Business Registration Division to transact business in Hawaii in any capacity, and under any name, including under the name GAH Law Group, LLC."   Dkt. No. 98-1 at ¶ 214 (p.59); *see also id*. at ¶ 31 (p.11), ¶¶ 165-166 (p.48); Dkt. No. 99-23 at ¶ 7.   This is a problem, given that Stone also admits that, after November 9, 2017, he continued to provide services to clients in Hawai'i.   *See id*. at ¶ 146 (p.43).

In this light, the undisputed record shows that, since at least November 9, 2017, Stone continued to do business in Hawai'i, even though he was not registered to do so.   As a result, OCP is entitled to summary judgment with respect to Claim Eight.

**B.**   **Remedies**

In the April 2020 Order, the Court denied OCP all of the relief it requested. Dkt. No. 77 at 15-16.   More specifically, apart from the almost complete lack of success on the merits of the first unopposed motion for summary judgment, the Court explained that OCP also provided little legal or factual support for the relief it requested.

In the second motion for summary judgment, OCP seeks the following remedies: (1) sanctions; (2) injunctive relief; (3) declaratory relief; (4) restitution; (5) disgorgement; and (6) fines and penalties.   The Court addresses each in turn below.

**1.**   **Sanctions**

OCP seeks sanctions for Stone drafting the opening brief in the appeal of an order of this Court denying certain individuals' motions to intervene.   Dkt. No. 101-1 at 20.   In that regard, OCP accurately observes that, in said order, the Court forewarned Stone that he would be sanctioned for preparing a filing for anyone other than himself.   However, earlier in the same paragraph, that warning was prefaced with the phrase: "In any proceeding before *this Court*…."   Dkt. No. 76 at 3 (emphasis added).   The brief filed with the Ninth Circuit Court of Appeals is not a proceeding before *this Court*.   Therefore, the Court declines to sanction Stone

for that conduct.   In doing so, though, the Court takes no position on OCP

bringing said matter to the attention of the Court of Appeals, if it so chooses.

### 2.   **Injunctive Relief**

OCP seeks injunctive relief against Stone.   More specifically, OCP seeks to

"enjoin Stone from doing business in Hawaii generally, and from assisting owners

of distressed property specifically[,]" to remedy purported violations of Chapter

481A (related to deceptive practices).   Dkt. No. 101-1 at 20-21.

In light of the discussion in Section A above, at this juncture, the Court

grants in part and denies in part OCP's request for injunctive relief.   Beginning

with the injunctive relief to which OCP is entitled, under Section 487-15 of the

Hawaiʻi Revised Statutes, OCP may seek to enjoin any violation of Section 487-

13(a)–related to the failure to register to do business–"or any other unlawful act or

practice affecting consumers, trade, or commerce."   Haw. Rev. Stat. § 487-15.

Here, as discussed above, OCP has established Stone's failure to register to

do business in Hawaiʻi.   Therefore, the Court enjoins Stone from doing *any*

business in the State of Hawaiʻi until such time that he registers to do business in

compliance with Hawaiʻi law.

As further discussed above, OCP has also established that Stone violated

Section 1015.5(a) and Section 480E-10(a)(10).   Therefore, Stone is hereby

enjoined, even after he registers to do business in Hawaiʻi as set forth above, from (1) requesting or receiving any fee or other consideration from a consumer until such consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer, and (2) after a written agreement described in clause (1) above is executed, receiving compensation that exceeds either the two most recent monthly mortgage installments of principal and interest due on the loan first secured by the distressed property or the most recent annual real property tax charged against the distressed property, whichever is less.

As further discussed above, OCP has shown with respect to certain consumers–specifically, Mr. & Mrs. DeShaw, Mr. Baliguat, Mr. & Mrs. Watson, Mr. & Mrs. Tyrell, Mr. & Mrs. Iosefa, Mr. & Mrs. Abing, Mr. & Mrs. Dicion, and Mr. & Mrs. Galang–that Stone violated Section 480E-10(a)(9).   Therefore, as to these individuals, Stone is hereby enjoined, even after he registers to do business in Hawaiʻi as set forth above, from receiving any compensation until after he has fully performed each service he has contracted to perform or represented would be performed.

22

As further discussed above, OCP has shown that Stone violated Sections 480E-3 and 480E-4 by failing to use written contracts containing the disclosures and/or language required by law.   Therefore, Stone is hereby enjoined, even after he registers to do business in Hawaiʻi as set forth above, from engaging in any "mortgage assistance relief service," as that term is defined in Section 480E-2 of the Hawaiʻi Revised Statutes, without using a *written contract* that complies with Sections 480E-3 and 480E-4.

To the extent OCP seeks any further injunctive relief, the Court denies such relief at this juncture.[13]

### 3.   **Declaratory Relief**

OCP seeks a declaration that Stone's contracts with consumers are void under Section 487-13(c) because he has failed to register to do business in Hawaiʻi. Dkt. No. 101-1 at 21.   The Court agrees.   Section 487-13(c) voids any contract for the furnishing of commodities or services by an unregistered person.   Haw. Rev. Stat. §487-13(c).   As discussed above, Stone admits that he has not registered to do business in Hawaiʻi.   Therefore, under Section 487-13(c), the

---

[13]In addition, because summary judgment has been denied with respect to OCP's claim under Chapter 481A, no relief (injunctive or otherwise) is warranted.

Court declares void any and all contracts Stone may have with any individual or entity in Hawai'i relating to his provision of services.

### 4. **Restitution**

OCP seeks restitution for Stone's clients in the amounts they have paid to him.   Dkt. No. 101-1 at 22 (citing Dkt. No. 98-30).   OCP asserts that a restitution order is warranted here because Stone did not register to do business in Hawai'i, and he received prohibited advance fees.   *Id.*   The Court agrees that restitution is warranted under Section 487-13(c) due to Stone's failure to register.

Section 487-14(a) of the Hawai'i Revised Statutes states that a court "may" award restitution in an action brought by OCP.   Haw. Rev. Stat. § 487-14(a). Here, because Stone has failed to register to do business in Hawai'i, the Court finds that restitution is warranted.   More specifically, in addition to voiding any contract with an unregistered person, Section 487-13(c) also provides that an unregistered person may not recover the price or reasonable value of any such contract.   Here, Stone has done precisely what Section 487-13(c) prohibits by recovering amounts that his clients agreed to pay him even though he was (and is) not registered to do business in Hawai'i.   Therefore, <u>all</u> of the payments he has received from his clients on and after November 9, 2017 are subject to restitution. *Cf. Wilson v. Kealakekua Ranch, Ltd.*, 551 P.2d 525, 530 (Haw. 1976) (concluding

24

that an architect who failed to pay a statutory licensing renewal fee was not prohibited from obtaining the value of services rendered under a contract and finding it "noteworthy" that, while a licensing statute for contractors did not allow an unlicensed contractor to obtain the "reasonable value" of a contract, the licensing statute for architects contained no such provision).

In that regard, OCP has submitted a chart–one which Stone created with certain undisputed revisions based upon Stone's deposition testimony–containing the undisputed amounts Stone has received from his clients since November 9, 2017.   Dkt. No. 98-30; *see also* Dkt. No. 98-1 at ¶¶ 228, 230-231, 236-237, 239-241, 244, 247, 251-252, 254, 257, 259-260, 296-297; Dkt. No. 99-24 at 11:9-12:8, 19:7-19, 21:12-20, 71:10-13 (referring to Dkt. No. 99-28); Dkt. No. 99-38 at 6:17-7:12; Dkt. No. 99-40 at 13:3-5, 14:25-15:13, 22:16-21 (referring to Dkt. No. 99-5 at 1); Dkt. No. 99-41 at 20:9-21:21); Dkt. No. 99-37 at 117:19-118:2; Dkt. No. 99-38 at 6:8-7:12 (referring to Dkt. No. 98-29).   Those amounts are subject to restitution should Stone's clients or former clients choose to accept the same.   *See* Haw. Rev. Stat. § 487-14(a) ("Any person in whose favor restitution is ordered need not accept restitution, but the person's acceptance and full performance of restitution shall bar recovery by the person of any other damages in any action on

25

account of the same acts or practices against the person making restitution.").[14]   In providing each of Stone's clients or former clients with a restitution election form, OCP must inform said clients that they need not accept restitution, but, if they do and Stone fully performs the restitution ordered, they will be barred from recovering any other damages in any action on account of Stone's same acts or practices for which they receive restitution.   Further, Stone is hereby enjoined from, in any way, interfering with OCP's efforts to obtain a response to the restitution election forms sent to Stone's clients or former clients.

### 5.   **Disgorgement**

OCP seeks disgorgement of $9,043.40 from Stone that it asserts Stone has received but has not been able to allocate to any particular client.   Dkt. No. 101-1 at 23.   Under the undisputed circumstances presented in the second motion for summary judgment, the Court agrees that disgorgement of this sum is appropriate. As discussed, Section 487-13(c) prohibits Stone from recovering amounts while he

---

[14]Specifically, should Stone's clients choose to accept restitution, they would, respectively, be entitled to the following amounts: Mr. & Mrs. Abing – $10,745; Mr. Baliguat – $27,000; Mr. & Mrs. Cabral – $28,000; Mrs. Danielson – $3,500; Mr. & Mrs. DeShaw – $34,016; Mr. & Mrs. Dicion – $26,000; Dr. & Mrs. Dimitrion – $5,235.60; Mr. Domingo – $21,900; Mr. & Mrs. Galang – $12,500; Mr. & Mrs. Harrell – $500; Mr. & Mrs. Iosefa – $28,500; Mr. Moore – $1,000; Mrs. Rodil – $13,800; Mr. & Mrs. Tyrell – $32,500; Mr. & Mrs. Watson – $16,561; Mr. & Mrs. Rush – $24,000.   *See* Dkt. No. 98-30.   With respect to Mr. & Mrs. Abing and Mr. & Mrs. DeShaw, the Court notes that the amounts to which they are entitled as restitution are different than the amounts provided in Dkt. No. 98-30.   The Court explains why in footnote 15 below.

is unregistered to do business in Hawai'i.   Undisputedly, he has done this.

Moreover, apart from the amounts he has acknowledged having received from

clients and can allocate to a specific client, Stone also concedes that he has

received additional amounts from his clients that he is not able to allocate.   *See*

Dkt. No. 99-26 at 22:8-23:19 (referring to Dkt. No. 98-16 at 5, Dkt. No. 98-29);

Dkt. No. 98-30.   That being said, the Court disagrees with OCP's calculation of

the amount Stone has been unable to allocate.   In its opening memorandum and in

the Declaration of John Tokunaga, OCP asserts that Stone has not been able to

allocate $9,043.40, relying principally upon Stone's discovery admissions and

Exhibit D-2 (Dkt. No. 98-30).   More specifically, OCP asserts that Stone has

allocated $278,457.60 to clients and has received a total of $287,501.   While the

Court does not disagree with the latter number, based upon Exhibit D-2, the former

number is wrong.   Specifically, having reviewed the amounts contained in Exhibit

D-2, the Court calculates that $285,757.60 has been allocated to Stone's clients.[15]

---

[15]Based upon Exhibit D-2, the Court believes that the discrepancy between the undersigned's and
OCP's calculation of the amounts allocated to specific clients is produced by OCP's
undercounting of the amounts allocated to two clients: Abing and DeShaw.   Specifically, it is
stated that Abing paid Stone $300, $4,345, $5,800, and $300.   OCP calculates this total as
$10,445, but it is actually $10,745.   Further, it is stated that DeShaw paid Stone $3,016,
$12,000, $12,000, and $7,000.   OCP calculates this total as $27,016, but it is actually $34,016.

The difference between $287,501 and $285,757.60 is $1,743.40, which is the amount the Court orders disgorged from Stone.[16]

### 6.   **Fines and Penalties**

OCP asserts that fines mandated by statute, ranging from $500 to $10,000, should be imposed on Stone for, *inter alia*, (1) failing to register to do business in Hawaiʻi, (2) requesting advance payments, and (3) requesting payments in excess of a client's most recent real property taxes.   Dkt. No. 101-1 at 23-25.   OCP further asserts that fines are warranted due to Stone's failure to use contracts in compliance with Sections 480E-3 and 480E-4, alleged misrepresentations to clients, and actions on his clients' behalf.   *Id.* at 25-26.   Based upon the undisputed record, the Court finds that certain fines are statutorily required in this case, as set forth below.

First, because Stone has failed to register to do business in Hawaiʻi, he is subject to mandatory fines.   *See* Haw. Rev. Stat. §487-13(b) (providing for a fine of between $500 and $2,500).   Moreover, because Stone has not only failed to register, but has, for years, as set forth above, continued to do substantial business

---

[16]Because no client or former client of Stone has thus far elected not to receive restitution as ordered above, the Court declines, at this stage, to address OCP's additional request that the amount to be disgorged from Stone increases commensurate with any amount for which restitution is not elected.   *See* Dkt. No. 101-1 at 22.

in Hawaii, despite the absence of a registration, the Court finds that the minimum statutory fine is not appropriate.[17]    Instead, the Court elects to impose a single fine of $2,500.

Second, as discussed above, Stone acknowledges that he has violated Section 1015.5(a) by receiving payments before his clients executed the required written agreement.    *See* Dkt. No. 97 at ¶ 1.    Moreover, Stone concedes that *all* payments he received from *each* client occurred prior to execution of the required written agreement.    *Id*.    Section 480-3.1 of the Hawai‘i Revised Statutes provides that a person violating Section 480-2 "shall be fined a sum of not less than $500 nor more than $10,000 for each violation…[,]" and "[e]ach day" a violation occurs constitutes a separate violation.    Section 480-2 prohibits, *inter alia*, unfair or deceptive acts or practices (or "UDAPs") in the conduct of any trade or commerce. Haw. Rev. State. § 480-2(a).    Further, Section 480E-11 provides that any violation

---

[17]The Court makes the following additional observations.    First, unlike other fines it requests, OCP does not appear to assert that multiple fines should be imposed on Stone for failing to register.    Therefore, the Court imposes one fine.    Second, as for the fine amount, in its opening memorandum, OCP states: "If the Court feels that the imposition of any fine beyond the minimum would necessitate a jury trial, the Court should impose the minimum fine, otherwise however, the Court should impose the maximum…."    Dkt. No. 101-1 at 23.    OCP cites no case law and provides no further explanation of the foregoing.    The Court nonetheless notes that a jury trial is not a prerequisite to imposing a fine that exceeds the statutory minimum, as the Court elects to do here.    *See Tull v. United States*, 481 U.S. 412, 427 (1987) (holding that, in an enforcement action under the Clean Water Act, "a determination of a civil penalty is not an essential function of a jury trial, and that the Seventh Amendment does not require a jury trial for that purpose in a civil action.").

of Chapter 480E of the Hawaiʻi Revised Statutes or "title 12 Code of Federal Regulations part 1015," such as Section 1015.5, constitutes a UDAP under Section 480-2. *Id*. § 480E-11(a), (b). In light of these statutory provisions, Stone's violations of Section 1015.5 and Section 480E-10(a)(9) constitute a violation of Section 480-2 and, thus, are subject to fines under Section 480-3.1.

Here, OCP asserts that Stone has requested or received 344 prohibited advance payments from various clients or potential clients. Dkt. No. 101-1 24; Dkt. No. 99-18. Based upon the evidence submitted, the Court finds that a proportion, but not all, of the alleged prohibited payments are subject to fines. More specifically, in support of its request, OCP submits a Declaration from John Tokunaga, charts prepared by Tokunaga reflecting the number of advance payments Stone has allegedly received, and checks that Stone has received from various (but not all) clients. With respect to the checks submitted, they show that 11 clients–Mr. & Mrs. Abing, Mr. Baliguat, Mr. & Mrs. Cabral, Mr. & Mrs. DeShaw, Dr. & Mrs. Dimitrion, Mr. Domingo, Mr. & Mrs. Iosefa, Mrs. Moseley, Mrs. Rodil, Mr. & Mrs. Tyrell, and Mr. & Mrs. Watson–made or were asked to make payments to Stone. For the reasons noted above with respect to Mrs. Moseley, the Court does not consider the single alleged violation related to her in its calculus. As for the remaining 10 clients, the evidence reflects that they sent or

were asked to send a total of 158 checks to Stone.[18]   *See* Dkt. Nos. 99-1 to 99-7, 99-9 to 99-11.   In addition, the evidence also reflects that another 3 clients were invoiced by Stone with respect to a total of 19 payments.   Dkt. Nos. 98-21, 98-22, 98-25.   In summary, the above-mentioned 158 checks and 19 invoiced payments each represent an advance payment or request for advance payment in violation of Section 1015.5(a) and shall be fined $500 per violation, which equals a total fine of $88,500.[19]

Third, as discussed above, it is clear and undisputed that Stone has received payments in excess of the monetary cap set forth in Section 480E-10(a)(10).   With respect to fines, OCP asserts that Stone has violated the foregoing provision a total of 339 times with respect to 14 clients,[20] citing a summary chart and the Tokunaga

---

[18]Specifically, the evidence reflects the following: Mr. & Mrs. Abing sent 6 checks; Mr. Baliguat had 17 checks sent on his behalf; Mr. & Mrs. Cabral sent 10 checks; Mr. & Mrs. DeShaw sent 35 checks; Dr. & Mrs. Dimitrion sent 3 checks; Mr. Domingo sent 13 checks; Mr. & Mrs. Iosefa sent 19 checks; Mrs. Rodil sent 12 checks; Mr. & Mrs. Tyrell sent 26 checks; and Mr. & Mrs. Watson sent 17 checks.   With respect to Mr. & Mrs. DeShaw, although Tokunaga states that they sent 36 checks, Dkt. No. 99-56 at ¶ 117, the Court's review reflects otherwise, *see* Dkt. No. 99-4.

[19]At this juncture, although OCP asserts that Stone has violated the foregoing rules or statutory provisions a total of 344 times, the Court denies any further relief than set forth herein because the evidence does not presently support any further violations.   In addition, the Court does not construe OCP's request with respect to fines in this regard to include a request for the cumulative counting of alleged violations under *both* Section 1015.5(a) *and* Section 480E-10(a)(9), but simply violations under one of those provisions both of which concern advance payments.

[20]The 14 clients are: Mr. & Mrs. Abing, Mr. Baliguat, Mr. & Mrs. Cabral, Mrs. Danielson, Mr. & Mrs. DeShaw, Mr. & Mrs. Dicion, Mr. Domingo, Mr. & Mrs. Galang, Mr. & Mrs. Iosefa, Mrs. Moseley, Mrs. Rodil, Mr. & Mrs. Rush, Mr. & Mrs. Tyrell, and Mr. & Mrs. Watson.   As before,

Declaration.   Dkt. No. 101-1 at 25.   Based upon the evidence submitted, which includes the summary chart (Dkt. No. 99-19), the Tokunaga Declaration, the real property tax assessment information concerning each client's property (Dkt. Nos. 98-2 to 98-12, 99-99-13, 99-16), the checks Stone received from his clients (Dkt. Nos. 99-1 to 99-4, 99-6 to 99-7, 99-9 to 99-11), and the invoices he sent to other clients (Dkt. Nos. 98-21, 98-22, 98-25), the Court finds that Stone committed a total of 161 violations of Section 480E-10(a)(10),[21] each of which will be fined $500, resulting in a total fine of $80,500.

Finally, OCP seeks fines with respect to at least six purported violations of federal and/or state law.   Dkt. No. 101-1 at 25-26.   As an initial matter, with respect to the final three categories of purported violations, the same were not alleged in the Complaint, and the Court has not awarded summary judgment with respect to them.   Therefore, the Court will not impose any fines for those

---

the Court does not consider the single alleged violation with respect to Mrs. Moseley in its calculus.

[21]Specifically, the evidence reflects that Stone committed the following number of violations of Section 480E-10(a)(10) with respect to the following clients: Mr. & Mrs. Abing – 5 times; Mr. Baliguat – 15 times; Mr. & Mrs. Cabral – 9 times; Mr. & Mrs. DeShaw – 34 times; Mr. & Mrs. Dicion – 4 times; Mr. Domingo – 12 times; Mr. & Mrs. Galang – 9 times; Mr. & Mrs. Iosefa – 19 times; Mrs. Rodil – 11 times; Mr. & Mrs. Rush – 1 time; Mr. & Mrs. Tyrell – 26 times; and Mr. & Mrs. Watson – 16 times.   With respect to Mr. & Mrs. DeShaw, although OCP's chart states that Stone violated Section 480E-10(a)(10) 31 times, the Court's review reflects otherwise. Further, because no evidence has been submitted of payments made or requested from Mrs. Danielson, the Court was unable to find any violations with respect to her.

purported violations.   As for the first three categories, they concern Stone's failure to comply with Sections 480E-3 and 480E-4.   As discussed above, Stone acknowledges that he has not entered into contracts containing the disclosures required by Sections 480E-3 and 480E-4.   *See* Dkt. No. 97 at ¶ 2; Dkt. No. 99-28 at 41:2-23; Dkt. No. 99-52 at 93:24-94:10.   However, unlike the fines just discussed with respect to advance and excessive payments, OCP does not quantify (or cite evidence of) the number of violations Stone has committed in this regard. *See* Dkt. No. 101-1 at 25.   As such, given that Stone has admitted to not having compliant contracts with respect to *any* of his clients and the evidence reflects that Stone had (or has) at least 16 clients (Dkt. No. 99-56 at ¶ 18; Dkt. No. 98-1 at ¶ 42 (p.14), ¶ 51 (p.17), ¶ 53 (p.17), ¶ 64 (p.20), ¶ 70 (p.21), ¶ 82 (p.24), ¶ 89 (p.26), ¶ 92 (p.27), ¶ 95 (p.28), ¶ 103 (pp.29-30), ¶ 114 (p.33), ¶ 120 (p.35), ¶ 126 (p.37), ¶ 129 (p.38), ¶ 282 (p.76); Dkt. No. 98-22; 98-25), the Court shall impose a fine of $500 for 16 violations of Section 480E-3 and 480E-4, which results in a total fine for those violations of $8,000.

## CONCLUSION AND SUMMARY

In the motion to stay, Stone asserts that the "logical core" of this case concerns whether his clients may intervene, presumably to declare their unbridled enthusiasm for his services.   While that "core" matter may help Stone sleep at

33

night, it is entirely irrelevant to any pertinent issue in this case.   This is because both the State of Hawaiʻi and the federal government have chosen to tightly regulate the industry−foreclosure defense−in which Stone has decided to practice. In other words, foreclosure defense is not the wild west where any practice, however purportedly beneficial, is permitted.   Instead, only those practices allowed by statute or rule are permitted, and, thus, it is those statutes and rules that are the focus of this case.   Because Stone does not dispute, and the evidence reflects, that he has practiced business in this State as if _no_ rules apply to him and in violation of numerous relevant statutes and rules, OCP is entitled to summary judgment as set forth herein.

Accordingly, the second motion for summary judgment, Dkt. No. 101, is GRANTED IN PART and DENIED IN PART.   Specifically, summary judgment is:

1.  GRANTED with respect to Claim 1, Claim 4, Claim 5, and Claim 8.

2.  GRANTED IN PART and DENIED IN PART with respect to Claim 3.

3.  DENIED with respect to Claim 7.

4.  GRANTED with respect to OCP's request for declaratory relief to the extent that any and all contracts Stone may have with any individual or entity in Hawaiʻi relating to his provision of services are void.

5.  GRANTED IN PART and DENIED IN PART with respect to OCP's request for injunctive relief to the extent set forth herein.

6.  GRANTED IN PART and DENIED IN PART with respect to OCP's request for restitution to the extent set forth herein.

7.  GRANTED IN PART and DENIED IN PART with respect to OCP's request for disgorgement to the extent set forth herein.

8.  GRANTED IN PART and DENIED IN PART with respect to OCP's request for fines and penalties to the extent, as more fully set forth herein, Stone shall be required to pay a **_total_** of $179,500.00 in statutory fines.

9.  DENIED WITHOUT PREJUDICE as to OCP's request for sanctions.

OCP's request for dismissal of Claim 6 is GRANTED.

The motion for stay, Dkt. No. 108, is DENIED.

IT IS SO ORDERED.

DATED: October 14, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*State of Hawaii v. Robert L. Stone;* CV 19-00272 DKW-RT; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT**