IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI, *by its Office of Consumer Protection*,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT L. STONE, *doing business as GAH Law Group, LLC*,<br><br>Defendant. | Case No. 19-cv-00272-DKW-RT<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE** |

Plaintiff State of Hawaiʻi, through its Office of Consumer Protection (OCP), once again moves for relief related to the undisputed and admitted abuse of the laws of the State of Hawaiʻi by Defendant Robert L. Stone. Put simply, despite being explicitly enjoined by this Court from continuing to do business in this State until he should register to do so, like every other business operating legally here, Stone has elected instead to continue doing business in much the same way as he has always done: unregistered and illegally. As a result, even though Final Judgment has been entered *and affirmed* on appeal, OCP returns to this Court for relief that it claims is warranted due to, largely, Stone's *post*-judgment misconduct. Having reviewed the parties' briefing and evidence submitted in connection therewith, as well as having held a hearing with the parties, the Court finds that

OCP is entitled to some of the relief that it seeks–notably, disgorgement of amounts Stone has received in the period since OCP's last submission of evidence. As a result, as more fully discussed below, OCP's motion for the issuance of an order to show cause ("motion"), Dkt. No. 139, is GRANTED IN PART.

## **DISCUSSION**[1]

Through a somewhat peculiar procedural request in its motion,[2] OCP seeks the issuance of 23 orders to show cause, running the gamut of alleged wrongdoings Stone has committed since evidence was presented by OCP in connection with its second motion for summary judgment. Dkt. No. 139-2 at 3-22. As relief, OCP demands permanent injunctive relief, civil penalties, restitution, and disgorgement. *Id*. at 22-25. At the October 15, 2021 hearing on the motion, OCP narrowed its request for relief. More specifically, OCP stated that it was seeking disgorgement of amounts received by Stone during three distinct periods of time: $25,900 for the period from July 20, 2020 to October 5, 2020, $35,318.76 for the period from October 14, 2020 to August 31, 2021, and, for the period September 1, 2021 until

---

[1] Because the parties should be more than familiar with it, the Court does not separately set forth the procedural and factual background of this case. The same can be found in numerous orders of this Court, *see, e.g.*, Dkt. No. 114 at 2-4, 7-33.

[2] OCP's motion is peculiar in that it essentially attempts to set up a two-step approach for relief –a motion *for* an order to show cause *and* then issuance of an order to show cause–to reach what could, and will here, be obtained in one–a motion for contempt.

the present, OCP sought an accounting from Stone detailing the deposits he has received for doing business in Hawaiʻi and then disgorgement of the same. In addition, OCP requested issuance of a permanent injunction prohibiting Stone from doing business in Hawaiʻi forever. Finally, unlike the relief demanded in the underlying motion, at the hearing, OCP also sought an order freezing Stone's bank account, which OCP attributes to Stone's business, GAH Law Group, LLC (referred to herein as "the BMO Account").[3]

The question, here, therefore, is whether OCP is entitled to the relief it seeks. In his response to the motion, Stone puts up little meaningful opposition. Stone first argues that, although he has received money from a client since the date of the Court's October 14, 2020 Order, this was for work he performed "through October of 2020 (when this Court's Order was entered)…." Dkt. No. 142 at 5. Putting aside that the October *14*, 2020 Order was not entered *through* October 2020, Stone entirely ignores that, in said Order, the Court *cancelled* "any and all contracts" he may have had with individuals or entities in Hawaiʻi. Dkt. No. 114 at 23-24. Therefore, contrary to Stone's assertion, he was not "owed" anything

---

[3] In light of counsel's statements at the hearing on behalf of OCP, the Court does not pick through the 23 requested orders to show cause set forth in the motion or any additional relief sought therein. Instead, the Court determines whether OCP is entitled to the relief sought at the hearing.

"under the written contract between Stone and Domingo required by law[]" because no such contract existed when he received the Domingo's money.

Second, Stone argues that, although clients−known as the DeShaws and Mr. Abing−are paying him for "research and supposed editing skills" in both an appeal from a decision in this case and a different case before the U.S. District Court for Hawai'i, he is not doing business in Hawai'i because neither he nor the DeShaws reside in Hawai'i, send payments to a bank account in Hawai'i, or communicate in Hawai'i. Dkt. No. 142 at 6-7. This argument is, of course, absurd. Apart from the fact that Stone conveniently ignores payments that he acknowledges receiving from Mr. Abing, who is undoubtedly a resident of Hawai'i, *see* Case No. 21-cv-95-JAO *Abing et al. v. Evers et al.*, Dkt. No. 1 at ¶ 21 (stating, in a Complaint signed by Abing, that Abing is a "homeowner and resident of the State of Hawaii"), in doing "research" and "editing" for cases in, or being appealed from, the District of *Hawai'i*, Stone is assuredly doing business *in* Hawai'i, whether or not he or his client is physically located here.

Stone's only remaining argument is that he has "substantially complied" with the October 14, 2020 Order, he has told all his clients that they must retain local counsel, and he has contacted a large number of attorneys to help obtain representation for the DeShaws and Mr. Abing. Dkt. No. 142 at 7-18. As

discussed above, Stone has not "substantially complied" with the October 14, 2020 Order. Rather, apart from the two arguments discussed above, he does not even address the alleged wrongdoings set forth in the motion. Moreover, the *principal* determination of the October 14, 2020 Order−that Stone could not do business in Hawai'i until he was registered to do so−has clearly (and admittedly) been violated. Finally, the thrust of Stone's argument−that he is simply helping clients out of a bind they may be in because they do not have legal representation−assumes both that Stone can provide *legal* representation in Hawai'i, which he cannot, and that Stone is some sort of good Samaritan. Given that Stone admits that he continues to receive large sums of money from clients, such as the DeShaws, *see* Dkt. No. 142 at 3; Dkt. No. 139-30, however, Stone is a *businessman* (operating illegally), not a good Samaritan. Moreover, even good Samaritans are not free to do business in Hawaii without limitations, such as those regarding registration imposed by the State.

    The question remains, then, to what relief is OCP entitled. Having considered the arguments in OCP's briefing and during the hearing, the Court finds that certain relief is warranted here, while other relief is not. The Court begins with the relief that is warranted. As mentioned above, OCP seeks to disgorge amounts from Stone related to three distinct windows of time. The first window is

July 20, 2020 to October 5, 2020, for which OCP seeks $25,900. Having reviewed the relevant evidence, the Court agrees that Stone received $25,900 during said time period. *See* Dkt. No. 98-1 at ¶¶ 183-186 (Stone admitting that the BMO Account was set up to enable him to deposit funds in "one central location" for work provided to Hawai'i homeowners); Dkt. No. 139-26 at 4-10 (monthly bank statements for the BMO Account from July to October 2020). Further, Stone has not objected to OCP's contention that said money was obtained due to him doing business in Hawai'i. Therefore, because the evidence shows that Stone is still not registered to do business in Hawai'i, *see* Dkt. No. 139-7 at ¶ 28, OCP is entitled to disgorgement of $25,900, *see* Haw. Rev. Stat. § 487-13(c) (prohibiting payments pursuant to a contract for services by an unregistered person).[4] Moreover, because Stone remains unregistered to do business in Hawai'i yet has continued to do so for the past year since this Court's October 2020 Order, he is fined again under Haw. Rev. Stat. Section 487-13(b) in the amount of $2,500. *See* Dkt. No. 114 at 28-29.

---

[4] Based upon the Court's review of the relevant evidence, along with Stone's failure to make any such objection, none of this amount represents "double-counting" with respect to any amounts ordered disgorged or subject to restitution in the October 14, 2020 Order. The evidence submitted in connection with said Order was through June 30, 2020, *see* Dkt. Nos. 99-1 at 6; 99-4 at 32; 99-15 at 19-20, while the time period here does not begin until July 20, 2020.

The second window of time is October 14, 2020 to August 31, 2021, for which OCP seeks $35,318.76.  Having reviewed the relevant evidence, the Court finds that Stone received at least $35,318.76 during said time period for Hawaii-related work.  *See* Dkt. No. 139-26 at 10-17 (monthly bank statements for the BMO Account from October 2020 to February 2021); Dkt. No. 139-29 (same for March to June 2021); Dkt. No. 143-22 at 4, 6 (same for July and August 2021).[5] Further, as with the money discussed in the first window of time, Stone does not object to the contention that this money was obtained as a result of him doing business in Hawaiʻi.  Therefore, OCP is entitled to disgorgement of $35,318.76.

The combined total of these two amounts is $61,218.76, which is the amount the Court orders to be disgorged from Stone.[6]  Stone is ordered to disgorge **$61,218.76** by **December 23, 2021**.[7]

---

[5]By the Court's calculation of the deposits in the BMO Account during this time period, Stone received $3<u>6</u>,318.76.  Because counsel for OCP only sought $35,318.76 at the hearing on the motion, though, that latter amount is the amount the Court orders to be disgorged.

[6]At the hearing on the motion, counsel for OCP also requested that Stone be fined on a daily basis in the event he fails to follow an order of disgorgement.  The Court is unprepared to order such a fine, however, where, as here, OCP has not provided the legal authority for the Court to do so.

[7]The Court agrees with OCP that, on this occasion, it is appropriate for OCP to obtain *disgorgement* from Stone, rather than for *restitution* to be ordered on behalf of Stone's clients, in the first instance.  *See* Dkt. No. 139-2 at 24-25.  Among other things, while Section 487-13(c) prohibits Stone from recovering the contract price for unregistered services, it is does not require that restitution be sought before disgorgement.  Here, where it is currently unknown from whom all of the amounts in the BMO Account were received, it is proper for OCP to obtain disgorgement in the first instance.  That being said, all amounts disgorged will be made available for restitution upon order of this Court following OCP filing a paper (with supporting

The third window of time is September 1, 2021 through the present.  OCP does not seek any specific monetary amount for this period, presumably because it has not yet been able to obtain bank records for deposits into the BMO Account. As a result, OCP requests that Stone be ordered to file a report disclosing the amounts deposited into the BMO Account since September 1, 2021.  The Court is unprepared to order this relief because it is essentially an attempt by OCP to have this Court conduct discovery on OCP's behalf.  That is something, as the evidence in this case reflects, OCP is more than capable of doing itself without any additional assistance from the Court.  Therefore, this request is denied.

At the hearing on the motion, OCP also requested a permanent injunction prohibiting Stone from doing business in Hawaiʻi forever.  The Court declines to issue such an injunction.  Instead, the Court reminds the parties, and in particular, Stone, that the injunctive relief ordered in the October 14, 2020 Order stands and remains fully effective.  This includes enjoining Stone "from doing *any* business in the State of Hawaiʻi until such time that he registers to do business in compliance with Hawaiʻi law."  Dkt. No. 114 at 21 (emphasis in original).

---

evidence) containing the identities of the clients and the amounts they paid to Stone during the relevant time periods.

Asking for further injunctive relief on top of this, at least at this point, appears unnecessary.[8]

Finally, at the hearing, OCP requested an order freezing the BMO Account. While the Court is not unsympathetic to OCP's pursuit of monies Stone admits to having moved out of the BMO Account−the Court is unprepared to freeze the BMO Account at this juncture. This is largely because the issue of freezing the account was not raised in the motion and, thus, not briefed by the parties. As a result, OCP has not explained the legal standard for freezing a bank account, why the facts here would support such a thing, or why freezing a single account would be of anything other than marginal assistance in the State's quest. Therefore, this request is denied without prejudice.

## **CONCLUSION**

At the hearing on the motion, Stone assured the Court that, from that moment on, he would perform no work in the State of Hawai'i "whatsoever", no money would change hands between Stone and his clients with business in Hawai'i, and he would work on no pleading in a civil rights case pending in this

---

[8] Among other things, enjoining Stone from doing business in Hawai'i seems no more likely to persuade him to comply with the Court's instructions than enjoining him from doing business here until he registers. The issue here is not a lack of orders or injunctions -- it is instead OCP's willingness to enforce the ones already issued.

District.  Stone gave his "word" with respect to those assurances.  At the very least, the Court expects Stone to remain true to those assurances.

With that in mind, OCP's motion for issuance of an order to show cause, Dkt. No. 139, is GRANTED IN PART to the extent set forth herein.

Stone is ORDERED to disgorge to OCP the amount of **$61,218.76** by **December 23, 2021**.  Stone is further fined the amount of **$2,500** to be paid to OCP by the same date.

IT IS SO ORDERED.

DATED: November 23, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

State of Hawaii v. Robert L. Stone; Civil No. 19-00272 DKW-RT; **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE**